875 P.2d 921

**Pedro O. SOL and Lourdes Sol, Plaintiffs–Appellants,**

v.

**AIG HAWAI'I INSURANCE COMPANY, a Hawai'i corporation, Defendant–Appellee.**

**No. 17038.**

Supreme Court of Hawai'i.

May 18, 1994.

Order Denying Reconsideration June 6, 1994.

Benjamin A. Pittenger, Michael K. Tateishi, Jan K. Apo and Steve Noufer of Tateishi & Apo, on the briefs, Wailuku, Maui, for plaintiffs-appellants.

Roy F. Epstein and Carleton B. Reid of Reid, Richards & Miyagi, on the briefs, Honolulu, for defendant-appellee.

Carleton B. Reid (John T. Hassler with him on the motion; Reid, Richards & Miyagi, of counsel), Honolulu, for defendant-appellee on the motion for reconsideration.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Plaintiffs–Appellants, Lourdes Sol (Lourdes) and Pedro Sol (Pedro) (collectively the Sols) appeal summary judgment entered in favor of defendant-appellee AIG Hawai'i Insurance Company (AIG). The Sols contend that the trial court erred by holding a provision in an AIG insurance policy valid. The provision permitted the amount of uninsured motorist coverage in an insurance policy to be reduced by the amount of no-fault benefits paid. We reverse the circuit court's granting of summary judgment in favor of AIG and remand for entry of judgment in favor of the Sols.

## I. BACKGROUND

On February 3, 1989, the Sols were injured when an uninsured motorist struck the couple's vehicle. Pedro submitted a claim for no-fault benefits to AIG, the no-fault insurance carrier, pursuant to an insurance policy that provided both no-fault and uninsured motorist coverage. AIG paid a total of $15,-000.00 in no-fault benefits to Pedro, including $9,600.00 in medical expenses and $5,400.00 in lost wages.

The Sols also submitted a claim for uninsured motorist benefits on behalf of Pedro for bodily injury and on behalf of Lourdes for loss of consortium under the AIG insurance policy. Because AIG and the Sols could not agree on the amount of damages due the Sols, the matter was submitted to arbitration pursuant to the terms of the policy.

The arbitrator determined that the Sols had sustained damages in the amount of $68,639.79—$23,639.79 in special damages and $45,000 in general damages, of which $4,500.00 was awarded to Lourdes for loss of consortium. Because Pedro was found to be ten percent contributorily negligent, the award was reduced to $61,775.81.

AIG tendered a check to the Sols in the amount of $46,775.81, which was the amount of the arbitrator's award less the $15,000.00 paid out by AIG in no-fault benefits to Pedro.

On September 27, 1991, the Sols brought a complaint for declaratory relief, seeking a determination by the court regarding the validity of the provision in the AIG uninsured motorist insurance policy that provided for an off-set of uninsured motorist benefits of any amount paid out in no-fault benefits.

AIG filed a motion for summary judgment, arguing that the record presented no genuine issue of material fact and that it was entitled to judgment as a matter of law inasmuch as the policy provisions that provided for the off-set were enforceable and not in violation of any relevant statute. The Sols filed a cross-motion for partial summary judgment, contending that the policy provision was ambiguous and contrary to the Hawai'i Revised Statutes (HRS). The trial court granted AIG's motion for summary judgment and denied the Sols' cross-motion. The Sols timely appealed.

## II. *STANDARD OF REVIEW*

On appeal, an award of summary judgment is reviewed under the same standard applied by the trial courts. Under Hawai'i Rules of Civil Procedure Rule 56(c), summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kaneohe Bay Cruises, Inc. v. Hirata*, 75 Haw. 250, 258, 861 P.2d 1, 6 (1993) (citing *Gossinger v. Association of Apartment Owners of The Regency Ala Wai*, 73 Haw. 412, 417, 835 P.2d 627, 630 (1992)).

## III. *DISCUSSION*

AIG contends that the language of the policy permits an off-set of no-fault benefits against uninsured motorist benefits.

The policy states in pertinent part:

In consideration of the coverage afforded under Section I (Basic No-Fault Endorsement) and the adjustment of applicable rates:

(A) Any amount payable under the Protection Against Uninsured Motorist (Family Protection) Coverage shall be excess to the amount of any no-fault benefits paid or payable under this or any other automobile insurance policy because of *accidental harm* sustained by an *eligible injured person.* [Emphasis in original].

The above policy language, according to AIG, is clear and unambiguous inasmuch as it purportedly states that the amount payable in uninsured motorist benefits may be reduced by any payments made under the no-fault portion of the contract.

Further, Part B of the policy entitled "Uninsured Motorist Coverage," details the "Limit of Liability," and provides:

Any amounts otherwise payable for damages under this coverage shall be reduced by:

\*     \*     \*     \*     \*     \*

(2) all sums paid or payable because of the bodily injury under any workers' or workman's compensation, disability benefits law or any similar law.

AIG contends that this provision also clearly articulates the allowance of off-sets of no-fault benefits because the no-fault law is a "similar law"; therefore, all payments made under a claim for uninsured motorist benefits are to be reduced by the amount of benefits paid out under no-fault.

The Sols argue that the terms of the policy are vague and ambiguous and therefore should be construed in favor of the insured. *See State Farm Mutual Automobile Ins. Co. v. Fermahin*, 73 Haw. 552, 556, 836 P.2d 1074, 1077 (1992) (citation omitted). If so construed, they contend that uninsured motorist benefits would be payable *in addition to* any no-fault payments, thereby precluding AIG from reducing the uninsured payment by no-fault payments.

■ While we deem the terms of the contract to be indeed vague and ambiguous, we also deem it unnecessary to address the clarity or lack thereof regarding these provisions in the insurance contract and the differing interpretations by other jurisdictions of similar clauses. The terms of the contract contravene the statutory language intended to prevent off-sets of no-fault benefits from uninsured motorist benefits. When the terms of an insurance contract are in conflict with statutory language, the statute must take precedence over the terms of the contract. *Columbia Casualty Co. v. Hoohuli*, 50 Haw. 212, 214–215, 437 P.2d 99, 102 (1968).

■ HRS § 431:10C–307 of the Hawai'i no-fault statute specifically provides for subrogation or reimbursement:

> *Rights of Subrogation.* Whenever any person effects a tort liability recovery for accidental harm, whether by suit or settlement, which duplicates no-fault benefits already paid under provisions of this article, the no-fault insurer shall be subrogated to fifty per cent of the no-fault benefits, up to the maximum limit specified by section 431:10C–103(6), paid to such person.

HRS § 431:10C–307 (Special Pamphlet 1987).[1]

This subrogation statute allows for up to a fifty percent reimbursement of the no-fault benefits paid by the no-fault carrier. *See Grain Dealers Mut. Ins. Co. v. Pacific Ins. Co., Ltd.*, 70 Haw. 211, 768 P.2d 226 (1989). If this provision were applied to the instant case, because AIG paid out the no-fault limit of $15,000.00 specified in § 431:10C–103(6),[2] AIG, as the no-fault carrier, would have been able to recover $7,500.00 pursuant to § 431:10C–307. However, this partial reimbursement, much less the $15,000.00, or one-hundred percent reimbursement that AIG claims, is *not* available to AIG because the

bodily injury claim was made pursuant to the Sol's *uninsured motorist coverage* rather than any applicable liability coverage.

■ HRS § 431:10C–307 does not specifically address the insurer's subrogation rights against uninsured motorist benefits. Nonetheless, because it is " '[o]ur duty in interpreting and applying statutes ... to ascertain and give effect to the legislature's intention to the fullest degree[,]' " *Richardson v. City and County of Honolulu*, 76 Hawai'i 46, 68, 868 P.2d 1193, 1215 (Sup.1994) (Klein, J., dissenting) (quoting *Methven–Abreu v. Hawaiian Ins. & Guar. Co., Ltd.*, 73 Haw. 385, 392, 834 P.2d 279, 284, *reconsideration denied*, 73 Haw. 625, 838 P.2d 860 (1992) (citation omitted)), *reconsideration denied*, 76 Hawai'i 247, 871 P.2d 795 (Sup.1994), we are not limited to the words of the statute to "discern the underlying policy which the legislature seeks to promulgate[.]" *Id.* (quoting *Survivors of Medeiros v. Maui Land & Pineapple Co.*, 66 Haw. 290, 297, 660 P.2d 1316, 1321 (1983) (citation omitted)). We, therefore, look to relevant legislative history to ascertain the legislature's intent in promulgating HRS § 431:10C–307.

■ Regarding reimbursement rights, the legislature clearly stated its intent to disallow the subrogation rights of the no-fault carrier against "optional additional" coverages when it amended the statute in 1977:

> This section [Section 294–7, "Rights of Subrogation"] is amended to clearly state the original intent of the Legislature when it passed the Hawaii No-fault Law. Whenever any person effects a tort liability recovery for accidental harm, whether by suit or by settlement, the no-fault insurer is entitled to subrogate fifty percent of the no-fault benefits, up to the maximum limit specified by Section 294–3(c). That limit is in the amount of $15,000. Therefore, if the

---

1. HRS § 431:10C–307 was amended in 1989 and provides:

   Whenever any person effects a tort liability recovery for accidental harm, whether by suit or settlement, which duplicates no-fault benefits already paid under the provisions of this article, the no-fault insurer shall be reimbursed fifty per cent of the no-fault benefits by such person receiving the duplicate benefits, up to

the maximum limit specified by section 431:10C–103(6).

HRS § 431:10C–307 (Supp.1992).

2. At the time of the accident, pursuant to § 431:10C–103, the "maximum limit" or "total no-fault benefits payable" to the insured was $15,000.00. Section 431:10C–103 has since been amended, and the new "maximum limit" is $20,000.00. HRS § 431:10C–103 (Supp.1992).

no-fault insurer paid no-fault benefits in excess of this $15,000 amount; the proper application of the present law as specified in Sections 294–2(10), 294–3, 294–4, and 294–10, Hawaii Revised Statutes, leaves no room for interpretation; but that the maximum amount that the no-fault insurer may subrogate is in the amount of fifty per cent of $15,000. *The no-fault insurer cannot subrogate against the optional additional coverages, which by rules and regulations of the Commissioner of Motor Vehicle Insurance each insurer is required to offer each applicant.*[3]

Sen.Conf.Comm.Rep. No. 776, in 1977 Senate Journal, at 1184 (emphasis added); *see also* Hse.Conf.Comm.Rep. No. 39, in 1977 House Journal, at 1262; *see In the Interest of John Doe,* 76 Hawaiʻi 85, 91 n. 10, 869 P.2d 1304, 1310 n. 10 (Sup.1994)·(citing *Mollena v. Fireman's Fund Ins. Co. of Hawaiʻi, Inc.,* 72 Haw. 314, 324–25, 816 P.2d 968, 973 (1991) ("subsequent statutory amendment construed to reflect original legislative intent").

■ Pursuant to HRS § 431:10C–301(b)(3), insurance coverage for uninsured motorists is "optional coverage":

(b) A motor vehicle insurance policy shall include:

\* \* \* \* \* \*

(3) With respect to any motor vehicle registered or principally garaged in this State, liability coverage provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 287–7, under provisions filed with and approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; pro-

vided, however, that the *coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage in writing.*

HRS § 431:10C–301(b)(3) (Special Pamphlet 1987) (emphasis added).[4]

■ We conclude that because the above statute provides that uninsured motorist coverage *may* be rejected, it is "optional" additional coverage. It follows, therefore, that because the legislature intended to prevent no-fault insurers from subrogating against the optional additional coverages, uninsured motorist coverage is exempt from no-fault reimbursement.

■ AIG does not address the legislature's specific intent to prohibit the no-fault insurer from subrogating against the optional additional coverages, but, nevertheless, objects to *any* statutory interpretation prohibiting reimbursement of no-fault benefits from uninsured motorist benefits. AIG argues that by precluding the off-set, the insured would receive a windfall in violation of the legislative tenet prohibiting duplicative recovery. *See American Ins. Co. v. Takahashi,* 59 Haw. 59, 575 P.2d 881, *reh'g denied,* 59 Haw. 102, 577 P.2d 780 (1978); *see also Kang v. State Farm Mutual Auto. Ins. Co.,* 72 Haw. 251, 815 P.2d 1020 (1991). This tenet, however, is not absolute. Duplicative recovery has been allowed pursuant to statute in particular instances.

For example, HRS § 431:10C–307[5] expressly affords reimbursement of fifty percent of the no-fault benefits received when the insured "effects a tort recovery for accidental harm ... which duplicates no-fault benefits already paid[.]" HRS § 431:10C–307 (Special Pamphlet 1987). As this statute detailing the "[r]ights of subrogation" dem-

---

**3.** This legislative history on the subrogation rights of the no-fault carrier referred to the then appropriate statutory section, 294–7. HRS Chapter 294, "Motor Vehicle Accident Reparations," was repealed in 1987 and replaced by HRS Chapter 431, "Insurance Code," Article 10C, "Motor Vehicle Insurance." Despite the numerical change, HRS § 431:10C–307, replacing § 294–7, has not substantively changed. Thus, the legislative intent articulated in this history is still the basis of the present subrogation statute.

**4.** HRS § 431:10C–301(b)(3) was amended in 1992 without any substantive changes and became effective on January 1, 1993.

**5.** *See supra* note 1.

onstrates, the legislature specifically provided that duplicative benefits are allowable.

The legislature further articulated its intent to allow duplicative benefits:

> [I]f the no-fault insurer paid no-fault benefits in excess of $15,000, the proper application of the present law as specified in Sections 294–2(10), 294–3, 294–4, 294–10, Hawaii Revised Statutes, leaves no room for interpretation but that the maximum amount that the no-fault insurer shall be subrogated is fifty per cent of $15,000.

Hse.Conf.Comm.Rep. No. 39, in 1977 House Journal, at 1262; *see also* Sen. Conf.Comm.Rep. No. 776, in 1977 Senate Journal, at 1184. Thus, even if the insured purchased no-fault coverage for *over* the statutory maximum of $15,000.00, the insurer will only be entitled to reimbursement of fifty percent of the no-fault benefits paid or $7,500.00, thereby affording an even larger possible duplicative recovery for the insured.

Likewise, the legislature has clearly expressed its intent regarding the effect of no-fault benefits on uninsured motorist benefits:

> Under the present law, a claimant need only reimburse his or her no-fault insurance company when he or she receives a third-party bodily injury liability settlement or judgment which duplicates no-fault benefits paid. A claimant receiving uninsured motorist or underinsured motorist benefits need not currently reimburse his or her insurance company for duplicate no-fault payment.

Stand.Com.Rep. No. 810–92, in 1992 House Journal, at 1196; *see Doe,* 76 Hawai'i at 92 n. 10, 869 P.2d at 1310 n. 10 (quoting *Franks v. City and County of Honolulu,* 74 Haw. 328, 340 n. 6, 843 P.2d 668, 674 n. 6 (1993)) (" '[T]his court has used subsequent legislative history or amendments to confirm its interpretation of an earlier statutory provision.' ") (citation omitted).

■ Insofar as (1) the limit of liability clause in AIG's insurance policy is contrary to the legislature's expressed intent to prevent the no-fault insurer from subrogating against uninsured motorist benefits, and (2)

duplicate recovery for insurance benefits is allowed pursuant to statute, we hold that AIG's contractual provision dictating reimbursement for no-fault benefits is invalid.

## IV. *CONCLUSION*

Accordingly, we reverse the circuit court's granting of summary judgment in favor of AIG and remand for entry of judgment in favor of the Sols.

## MOTION FOR RECONSIDERATION

Upon consideration of defendant-appellee AIG Hawai'i Insurance Company's motion for reconsideration filed on May 27, 1994, and it appearing that

(1) the amendment to Act 124 referred to in the 1992 House Journal Standing Committee Report proposing a ban on recovery of duplicate payments from uninsured motorist and underinsured motorist coverages was subsequently deleted from the bill, and no further references to this proposed amendment were made in subsequent committee reports, and

(2) it appearing that the legislature therefore abandoned the proposed amendment to the statute, and

(3) the court having addressed the remaining concerns of the motion for reconsideration in the opinion filed on May 18, 1994,

it remains that, pursuant to Hawai'i Revised Statutes (HRS) § 294–7 (1985) and HRS § 431:10C–307 (1992), an insured receiving uninsured motorist or underinsured motorist benefits need not reimburse his or her no-fault insurance carrier.

Accordingly, defendant-appellee AIG Hawai'i Insurance Company's motion for reconsideration filed on May 27, 1994, is hereby denied.