Hoang T. TRAN, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign cor-
poration; Does 1 through 10; Doe Cor-
porations, Partnerships and/or other En-
tities 1–10, Defendants.

No. CV. 97–00732–DAE.

United States District Court,
D. Hawaii.

March 27, 1998.

David L. Turk, Michael R. Goodheart, Honolulu, HI, for Hoang T. Tran.

Richard B. Miller, Riki J. Fujitani, McCorriston Miho Miller & Mukai, Honolulu, HI, for State Farm Mut. Auto. Ins. Co.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

The court heard Defendant's Motion on March 23, 1998. Michael R. Goodheart, Esq., appeared at the hearing on behalf of Plaintiff; Darolyn Hatsuko Lendio, Esq., and Riki J. Fujitani, Esq., appeared at the hearing on behalf of Defendant State Farm Mutual Automobile Insurance Company. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment.

### BACKGROUND

On October 18, 1994, Plaintiff was a passenger in a vehicle driven by Tuan A. Vu ("Vu") which was involved in a three vehicle collision. Vu was hit from behind by a Honda Accord that was forced into the rear of his vehicle by a Honda Civic driven by an uninsured motorist. Vu's vehicle was insured by State Farm Mutual Automobile Insurance Company ("State Farm") policy number 0607–680–E11–51A, with uninsured motorist coverage limits of $100,000.

Plaintiff made a no-fault claim under State Farm's policy for reimbursement of expenses that were reasonable and necessary. State Farm paid the claim to the extent of the policy limits. On March 22, 1995, Plaintiff's counsel sent a letter to State Farm informing State Farm of Plaintiff's potential uninsured motorist claim. And, on August 14, 1995, Plaintiff made a claim under the uninsured motorist portion of the policy.

On August 22, 1995, State Farm responded to Plaintiff's uninsured motorist demand with a letter requesting additional records, and requesting permission to take recorded statements. On September 29, 1995, State Farm

reiterated the request it had made in the August 22, 1995 letter. Plaintiff never responded to State Farm's requests.

On October 19, 1995, Plaintiff forwarded a letter to State Farm demanding arbitration of his uninsured motorist claim. On January 26, 1996, State Farm confirmed the coverage limits for the uninsured motorist policy and again requested the additional information stated in the August 22, 1995 letter.

After preparation for the arbitration and evaluation of Plaintiff's personal injury claim, State Farm offered a settlement of $28,000, which was rejected. On February 20, 1997, State Farm offered $35,000 as a final settlement of Plaintiff's claim, allegedly including both general and special damages. On February 24, 1997, Plaintiff submitted a letter to State Farm requesting $45,000 for settlement. Plaintiff's offer was rejected by State Farm on February 24, 1997, and State Farm indicated that it rested on its previous offer of $35,000. Both on February 25, and 27, 1997, State Farm sent letters to Plaintiff reiterating the $35,000 settlement offer. On February 27, 1997, Plaintiff's counsel forwarded a letter to State Farm declaring that State Farm's position was taken in "bad faith." On February 28, 1997, Plaintiff revoked his offer of $45,000 and rejected State Farm's settlement offer.

The issue was arbitrated, and Plaintiff was awarded $50,039.18 in general and special damages on April 9, 1997, which was promptly paid by State Farm. On May 2, 1997, Plaintiff filed the instant Complaint in the First Circuit Court, State of Hawaii. The matter was removed by State Farm on June 6, 1997. In his Complaint, Plaintiff alleges breach of the covenant of good faith and fair dealing, and punitive damages.

On January 28, 1998, State Farm filed the instant Motion for Summary Judgment. On March 4, 1998, Plaintiff filed his Opposition, and on March 12, 1998, State Farm replied.

### STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the nonmoving party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323. *But cf., Id.,* at 328 (White, J., concurring).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Elec.,* 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Building Products, Inc. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (original emphasis).

The standard for a grant of summary judgment reflects the standard governing the

grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Eisenberg,* 815 F.2d at 1289.

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec.,* 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the nonmoving party. *Id.* These inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the nonmoving party. *Id.*

Genuine factual issues must be supported by significant probative evidence. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). Hence, the non-moving party may not stand on its pleadings or merely assert it will controvert the movant's evidence at trial. *See T.W. Elec.,* 809 F.2d at 630. Simple disagreement about a material issue of fact, therefore, no longer precludes the use of summary judgment. *California Architectural Bldg. Prod.,* 818 F.2d at 1468.

### DISCUSSION

**I.** *Breach of the Covenant of Good Faith and Fair Dealing.*

In *Best Place, Inc. v. Penn America Ins. Co.,* 82 Hawai'i 120, 920 P.2d 334 (1996) the Hawaii Supreme Court established a cause of action for breach of the covenant of good faith and fair dealing ("bad faith") in the insurance context. *Best Place, Inc. v. Penn America Ins. Co.,* 82 Hawai'i 120, 920 P.2d 334, 347 (1996). The court explained the standard as follows:

> the insured need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured. An unreasonable delay in payment of benefits will warrant recovery for compensatory damages under the Gruenberg test. However, conduct based

on an interpretation of the insurance contract that is reasonable does not constitute bad faith. In addition, an erroneous decision not to pay a claim for benefits due under a policy does not by itself justify an award of compensatory damages. Rather the decision not to pay a claim must be in "bad faith."

*Id.* (citations omitted).

Thus, the law in the State of Hawaii regarding breach of the covenant of good faith and fair dealing is based upon a test articulated and adopted by the California Supreme Court in *Gruenberg v. Aetna Insurance Company,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032, 1040 (1973). The court specified that the

> responsibility is not the requirement mandated by the terms of the policy itself to defend, settle or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.

*Id.* 510 P.2d at 1037. Furthermore, an insurer who does not accept a reasonable settlement offer within policy limits is also liable for violation of its duty to act in good faith regarding the interests of the insured. *Id.* at 1036–37 (internal quotations and citations omitted). In *Gruenberg,* the court explained that the insurer's duty is not excused merely because the plaintiff breaches the express terms of the policy. *Id.*

When the Hawaii Supreme Court created the bad faith cause of action in *Best Place* it focused on the reasonableness of the insurer's actions. An analysis of what is reasonable is almost always de facto a question for the jury. In the instant case there are, essentially, allegations coming from both sides that the other acted in bad faith. Plaintiff asserts that State Farm failed to deal fairly with him, and State Farm's employees insisted that Plaintiff settle for less

than his case was worth. State Farm argues that it was Plaintiff who failed to comply with the terms of the policy by not assisting State Farm in the evaluation of his claim. This is exactly the type of issue, under *Best Place*, that the jury should consider, and one that should not be made by the court.

State Farm submits that this lawsuit is based upon a "difference of opinion with regard to the value of a [sic] uninsured motorist ... claim for benefits." State Farm's Motion at 1. Plaintiff on the other hand insists that "[t]hat statement could not be more inaccurate." Plaintiff's Opp. at 2. Plaintiff contends that the lawsuit is based upon the mishandling of Plaintiff's claim and "is based upon a pattern of conduct designed to wear down a claimant to make him compliant with accepting whatever offer is ultimately made to him." *Id.*

■ In the Complaint, Plaintiff asserts that State Farm failed to properly investigate the uninsured motorist claim, and therefore, Plaintiff was required to demand arbitration. Complaint at ¶¶ 7–8. Plaintiff also alleges that State Farm demanded discovery only after arbitration proceedings were commenced because it had failed to do so when the claim was initially presented. Complaint at ¶ 9. After a careful review of the record in this case, the court concludes that there are triable issues of fact to be determined by a jury.

■ While State Farm did not fail to respond to offers or requests presented by Plaintiff, there is a factual issue regarding whether the records and statement requested by State Farm were necessary. For example, Plaintiff's counsel admittedly did not respond to requests made by State Farm because he felt that State Farm's requests for medical records "weren't relevant" be-

cause apportionment was not an issue as far as he was concerned. Exhibit 17 at 33–34:23–25, 20–21, Defendant's Reply. Even if Plaintiff did not abide by the express terms of the policy, State Farm is still not discharged from conducting its activities in good faith. As noted, the covenant of good faith and fair dealing is not waived merely because a claimant fails to abide by the terms of the policy. *Gruenberg*, 108 Cal.Rptr. 480, 510 P.2d at 1040.

To demonstrate the existence of triable issues of fact Plaintiff makes two showings. First, Plaintiff asserts that when State Farm made its offer, it failed to include special damages in the offer, in violation of the language of *Sol v. AIG Hawaii Ins. Co.*, 76 Hawai'i 304, 875 P.2d 921 (1994),[1] and failed to explain the inconsistencies in the negotiations process. Second, Plaintiff maintains that State Farm unjustifiably delayed processing his uninsured motorist claim by asking for more information "which it already had or which it knew did not exist."[2] Plaintiff's Opp. at 2.

Plaintiff submitted its uninsured motorist claim to State Farm on August 14, 1995. He included medical information that he considered "more than adequate to evaluate our client's claim arising from the October 18, 1995, accident." Exhibit G at 1, State Farm's Concise Statement of Facts; Exhibit G, Plaintiff's Response to Defendant's Concise Statement of Facts. The letter included a breakdown of Plaintiff's special damages totaling $20,000 for medical bills and lost wages. *Id.* at 3. The letter also demanded uninsured motorist policy limits in general damages within seven days, or an explanation setting forth why such payment was denied. *Id.* On August 22, 1995, State Farm

---

**1.** In *Sol*, the Hawaii Supreme Court held that the duplicative recovery for insurance benefits as between a no-fault insurer and an uninsured motorist insurer is allowed pursuant to statute. 875 P.2d at 926. The court found that the legislature clearly expressed an intent to prevent the no-fault insurer from subrogating against uninsured motorist benefits. *Id.*

Plaintiff here continually cites to *Sol*, presumably for the proposition that even though he obtained payment for his medical and other reasonable and necessary expenses under the no-fault policy, he is still entitled to payment of his

medical bills under the uninsured motorist portion of the policy. State Farm does not dispute this.

**2.** Plaintiff's counsel sent a letter to State Farm on March 22, 1995, informing State Farm that Plaintiff may make a claim under the uninsured motorist policy. The letter requested that an adjuster be assigned to the uninsured motorist files and that the adjuster "have no access to my clients' No–Fault records without written authorization." Exhibit E, State Farm's Concise Statement of Facts.

responded to Plaintiff's claim by requesting emergency room and clinical notes from First Physical Medical Clinic, clinical notes and any records from Oriental Medical Health Center, clinical notes and any records from Kelvin Washington, L.M.T., and prior records of up to three years from Plaintiff's personal physician before the date of loss. Exhibit H, State Farm's Concise Statement of Facts; Exhibit H, Plaintiff's Response to Defendant's Concise Statement of Facts. State Farm also requested a recorded statement from Plaintiff "since there is a question of liability." *Id.* Plaintiff never responded to State Farm's letter.

On September 29, 1995, State Farm forwarded a second letter to Plaintiff's counsel requesting compliance with the August 22, 1995 letter "so we may be in a better position to evaluate your clients' uninsured motorist claims." Exhibit J at 1, State Farm's Concise Statement of Facts; Exhibit J, Plaintiff's Response to Defendant's Concise Statement of Facts. State Farm also cited to portions of the policy which required that the insured cooperate with State Farm to determine the amount due under the policy. Plaintiff again did not respond. On October 19, 1995 however, Plaintiff demanded arbitration regarding his uninsured motorist claim. Exhibit K, State Farm's Concise Statement of Facts. On January 26, 1996, State Farm forwarded a letter to Plaintiff's counsel confirming policy limits of $100,000 and again requesting the records described in the August 22, 1995 letter. Exhibit M, State Farm's Concise Statement of Facts.

Counsel for State Farm made formal discovery requests to the arbitrator regarding the materials originally discussed in the August 22, 1995 letter. The arbitrator granted State Farm a one hour deposition of Plaintiff, however, only allowed the subpoena of medical records if, during the oral deposition, Plaintiff indicated that he had pre-accident injuries. Exhibit P at 1, State Farm's Concise Statement of Facts.

According to the injury evaluation form prepared at State Farm, State Farm evaluated Plaintiff's claim between $29,000 to $31,000 for general and special damages. Exhibit Q, State Farm's Concise Statement of Facts. The claims adjuster was given the authority to offer $35,000 for a total settlement of all claims under the uninsured motorist policy. *Id.* Plaintiff continues to assert that this is unreasonable, based upon the medical specials already incurred by Plaintiff, and already determined reasonable and necessary under the No–Fault portion of the policy.

In order to show that State Farm acted in "bad faith," Plaintiff must demonstrate evidence that it acted unreasonably with respect to his claim. *Best Place,* 920 P.2d at 347. While the record does not evidence a clear showing that State Farm acted in bad faith, and in fact reveals that Plaintiff may not have properly assisted State Farm, there are triable issues of fact best resolved by a jury. There was a recorded statement given by the uninsured motorist prior to State Farm's request for a recorded statement of Plaintiff, in which she admitted complete liability for the accident. Still, on August 22, 1995, State Farm requested a recorded statement from the Plaintiff because it stated there was still a "question of liability." Exhibit H, State Farm's Concise Statement of Facts; Exhibit H, Plaintiff's Response to Defendant's Concise Statement of Facts. Plaintiff contends that since the uninsured motorist had already admitted to liability for the accident, that in fact there was no question of liability on August 22, 1995, and State Farm was merely attempting to delay payment.

Plaintiff also maintains that State Farm attempted to conceal its non-compliance with *Sol* by providing inconsistent explanations regarding the inclusion of general and special damages in the offer. The injury evaluation form prepared by State Farm representatives for settlement purposes, dated February 7, 1997, shows that both general and special damages were included in the evaluation of the claim, and also shows a total settlement authority at $35,000. *See* Exhibit Q, State Farm's Concise Statement; Exhibit Q, Plaintiff's Response to Defendant's Concise Statement of Facts. Nonetheless, Plaintiff points out that in a telephone conversation with a State Farm representative on February 13, 1997, Plaintiff's counsel was given a settlement offer for Plaintiff in the amount of $28,000. At that time Plaintiff's counsel asked if the offer included only gen-

eral damages, and the State Farm representative indicated it did. Exhibit 11 at 2, Plaintiff's Response to Defendant's Concise Statement of Facts. On February 14, 1997, Plaintiff's counsel again spoke with State Farm's representative, and at that time was informed that the offers included both *general* and *special* damages. *Id.* Plaintiff refers to this in order to support his position that State Farm attempted to conceal their noncompliance with *Sol.* In order to determine what occurred in this instance, the court would be required to judge the credibility of the evidence presented. The court cannot make such a determination at summary judgment. Therefore, whether State Farm acted in bad faith by not providing accurate information to Plaintiff's counsel is a triable issue of fact.

Plaintiff also asserts that there is a triable issue of fact regarding whether "re-visiting medical issues, which had already been resolved, was reasonable." Plaintiff's Opp. at 6. Plaintiff explains that State Farm had already determined the medical bills paid under the No–Fault portion of the policy were reasonable and necessary, and did not need other evidence of Plaintiff's injury. State Farm asserts that Plaintiff's counsel did not allow State Farm claims adjusters that were working on the uninsured motorist claim any access to the no-fault files without his written authorization. *See* Exhibit 16, State Farm's Reply. Thus, the claims adjusters working on the uninsured motorist claims were unaware of the medical bills and records processed under the no-fault portion of the policy. State Farm's Reply at 5. However, Plaintiff points to the use of the No–Fault medical bills in the injury evaluation form as evidence that State Farm adjusters were aware of Plaintiff's medical treatment and injury already paid under the No–Fault portion of the policy. Plaintiff therefore insists that the re-evaluation of the Plaintiff's injury, causation, and medical bills was totally unnecessary and unreasonable. Again, the court is not in a position to determine which party is making the correct analysis of the matter. Thus, the issue of reasonableness must be put to a jury.

As evidenced by the record, there are several disputed issues that should be determined by a jury in this matter. Accordingly, State Farm's Motion for Summary Judgment is DENIED.

## II. *Emotional Distress.*

Plaintiff also claims incidental damages as a result of the severe emotional distress that he suffered in his dealings with State Farm. In his memorandum he explained that the claims for emotional distress are not independent claims for negligent or intentional infliction of emotional distress, but are instead claims for damages flowing from State Farm's breach of the covenant of good faith and fair dealing. Plaintiff's Opp. at 13–14.

State Farm maintains that Plaintiff relies on California authority, and not the Hawaii standard for emotional distress. State Farm explains that in order to recover for negligent infliction of emotional distress in Hawaii for one not physically injured, an underlying injury to a person or property must be shown. State Farm's Reply at 13. Furthermore, State Farm avers that intentional infliction of emotional distress is not appropriate on these facts as State Farm's acts were not beyond all bounds of decency. *Id.*

 Hawaii recognizes an independent cause of action for negligent infliction of emotional distress. *Rodrigues v. State of Hawaii,* 52 Haw. 156, 472 P.2d 509 (1970). The elements of the cause of action are (1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress. *R. Calleon v. Miyagi and MTL,* 76 Hawai'i 310, 320, 876 P.2d 1278 (1994). In *Rodrigues,* the Hawaii Supreme Court found that

> serious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case.

*Id.* There is no requirement that the plaintiff exhibit physical symptoms or manifestations of mental distress to recover on a claim for negligent infliction of emotional distress. *Leong v. Takasaki,* 55 Haw. 398, 403, 520 P.2d 758 (1974). Additionally, the plaintiff must be a member of the class of individuals

forseeably endangered by the defendant's conduct. *Rodrigues*, 52 Haw. at 174, 472 P.2d at 521. As a further limitation, where physical injury does not occur to Plaintiff or some other party, a claim cannot be asserted. Recovery is generally only permitted when "there is some physical injury to property or a person resulting from the defendant's conduct." *Ross v. Stouffer*, 76 Hawai'i 454, 465–66, 879 P.2d 1037, 1048–49 (1994). Hence, in the instant case, Plaintiff is unable to allege a cause of action for negligent infliction of emotional distress as there is no underlying physical injury to either a person or property flowing from the bad faith claim.

■ Plaintiff is also unable to assert an independent claim for intentional infliction of emotional distress. In *Ross v. Stouffer Hotel Co. Ltd.*, 76 Hawai'i 454, 879 P.2d 1037, 1048 (1994), the Hawaii Supreme Court explained that a plaintiff can recover for intentional infliction of emotional distress only if the defendant's act is "unreasonable," in that "it is without just cause or excuse and beyond all bounds of decency." Here, State Farm's conduct does not rise to the level of "unreasonableness" articulated by the Hawaii Supreme Court in *Stouffer*, and thus Plaintiff cannot assert a claim for intentional infliction of emotional distress.

However, Plaintiff does not contend that his claim for emotional distress is an independent cause of action, separate and apart from his claim for breach of the covenant of good faith and fair dealing. In fact, Plaintiff insists that his claim for emotional distress damages is part and parcel of his bad faith cause of action. He propounds that once he has proven bad faith, he is entitled to obtain incidental damages encompassing damages for his emotional distress.

To establish his position, Plaintiff cites to *Gourley v. State Farm Mut. Auto. Ins. Co.*, 53 Cal.3d 121, 3 Cal.Rptr.2d 666, 822 P.2d 374 (1991). In *Gourley*, the California Supreme Court held that:

once the threshold requirement of economic loss is met, the insured need not show additional loss or injury to recover damages for his mental distress as long as such damages were proximately caused by his insurer's breach of the implied covenant.

3 Cal.Rptr.2d 666, 822 P.2d at 378 (citations omitted). The court in *Gourley* relied upon analysis and holdings from its previous decision in *Gruenberg*, the case that the Hawaii Supreme Court referred to, and relied upon, when it recognized the bad faith cause of action in Hawaii. *Id.* The California Supreme Court has acknowledged that in regards to the requirements of mental distress in relation to a bad faith cause of action, the court is dealing with "mental distress resulting from a substantial invasion of property interests of the insured and not with the independent tort of intentional infliction of emotional distress," and therefore the requirements of outrageous conduct and severe emotional distress are inapplicable. *Gruenberg*, 108 Cal.Rptr. 480, 510 P.2d at 1041.

State Farm argues that Plaintiff is relying on California law. State Farm contends that in Hawaii in order to obtain damages for emotional distress, a plaintiff must properly assert a claim for negligent infliction of emotional distress or intentional infliction of emotional distress. State Farm is correct to the extent that a plaintiff choosing to claim damages solely based upon intentional or negligent infliction of emotional distress must have evidence to support each of the elements of those claims. However, here Plaintiff is not asserting an independent cause of action for emotional distress. He is only entitled to recover damages due to his emotional distress if he succeeds on his claim for bad faith and can show that the emotional distress was proximately caused by State Farm's conduct.

■ There is no Hawaii case that specifically states that Plaintiff can recover for emotional distress as incidental damages. However, in Hawaii, a claim for breach of the covenant of good faith and fair dealing is a tort cause of action based upon a contractual relationship. *Best Place*, 920 P.2d at 346. *Best Place* is an expansive decision, recognizing a tort cause of action, and also allowing punitive damages to be awarded for such a claim so long as a plaintiff shows "something more than the conduct necessary to establish the tort." *Id.* at 348 (internal quotations omitted). There is nothing in the language of *Best Place* to indicate that the Hawaii

Supreme Court intended to limit available damages. Considering bad faith is a tort, it logically and reasonably follows that a plaintiff should be entitled to the full range of tort remedies.

In *Dold v. Outrigger Hotel,* 54 Haw. 18, 501 P.2d 368, 372 (1972), the Hawaii Supreme Court recognized that a plaintiff could bring a claim in tort where a contract is breached in "a wanton or reckless manner . . . ." The court also explained that recovery for the tortious injury is not limited to out-of-pocket expenses, but can also include damages for emotional distress and disappointment. *Id.* While tortious breach of contract is certainly distinct from bad faith, the fact that the Hawaii Supreme Court allowed the full panoply of available tort remedies for such a claim so closely related to a contract claim is persuasive here. Thus, if presented with the issue regarding whether a plaintiff in a bad faith cause of action is able to claim incidental damages for emotional distress, it is this court's considered judgment that the Hawaii Supreme Court would find that such a claim can be made. Consequently, if Plaintiff here succeeds on his bad faith claim, and he can show that his emotional distress damages were proximately caused by State Farm's actions, he can recover damages for his emotional distress as incidentally flowing from the breach. Hence, State Farm's Motion for Summary Judgment as to this issue is DENIED.

At the hearing on the Motion for Summary Judgment State Farm averred that it will make a motion in limine to exclude damages for emotional distress due to an alleged problem with causation. State Farm also submitted a Second Supplemental Declaration filed on March 23, 1998, including copies of a deposition transcript in which Plaintiff indicates that his knowledge of State Farm's alleged actions came from Mr. Vu or his attorneys. *See* Exhibit A at 10–11, Second Supplemental Declaration of Riki J. Fujitani. It is not appropriate for the court to address the issue of causation at this time, as it was not presented as part of State Farm's Motion for Summary Judgment, and Plaintiff has not had an opportunity to adequately respond to the allegations.

III. *Punitive Damages.*

Plaintiff claims punitive damages alleging that State Farm's conduct was wanton and oppressive. State Farm challenges this claim insisting that the conduct committed by State Farm does not warrant an award of punitive damages.

Hawaii law mandates that punitive damages be awarded only when the defendant has acted egregiously, intentionally, and deliberately, and with "a character of outrage frequently associated with a crime." *See Masaki v. General Motors Corp.,* 71 Haw. 1, 780 P.2d 566, 569 (1989). A plaintiff may be entitled to punitive damages where he can show "by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences." *Id.* 780 P.2d at 575; *see also Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 839 P.2d 10, 37 (1992). "[P]unitive damages are not awarded for mere inadvertence, mistake, or errors of judgment. Something more than the mere commission of a tort is always required for punitive damages." *Masaki,* 780 P.2d at 570 (citation and internal quotation marks omitted).

Plaintiff asserts that the unjustifiable delay in payment of the uninsured motorist benefits, the alleged refusal to offer specials, the refusal to explain alleged inconsistencies in the negotiations, and in the refusal to pay undisputed amounts, justify an award of punitive damages. He contends that State Farm was deliberately trying to "avoid making a fair and just offer under the policy's grant of coverage, and was trying to conceal its intentions." Plaintiff's Opp. at 16.

Even if the court assumes that the acts alleged by Plaintiff are true, there is no showing that State Farm acted "wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference . . . ." *Masaki,* 780 P.2d at 575. The court in

*Masaki* was clear that a plaintiff must show something more than the commission of a tort. 780 P.2d at 570. Thus here, even if Plaintiff is able to prove breach of the covenant of good faith and fair dealing, Plaintiff is still required to make a showing that State Farm's actions were more than unreasonable, but were also done in a manner that exhibits conscious indifference to the consequences.

State Farm pointed to the lack of evidence suggesting malicious intent on its part. At summary judgment Plaintiff is therefore required to make a showing, or provide some evidence to support its position, and Plaintiff has failed to do so here. There is not sufficient evidence to reach the clear and convincing standard, and thus the question of punitives cannot be put to a jury. The court GRANTS State Farm's Motion for Summary Judgment as to Plaintiff's claim for punitive damages.

### CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part State Farm's Motion for Summary Judgment. State Farm's Motion is DENIED as to the claim for breach of the covenant of good faith and fair dealing, and the issue of emotional distress damages. State Farm's Motion is GRANTED as to the Plaintiff's claim for punitive damages.

IT IS SO ORDERED