**MARIE FLORES**, Appellant–Appellant, v. **UNITED AIR LINES, INC.**, and **DIRECTOR OF THE DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, STATE OF HAWAII**, Appellees–Appellees

NO. 12277

(CIV. NO. 86–3302)

JUNE 14, 1988

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

**2**

## OPINION OF THE COURT BY NAKAMURA, J.

The question in this appeal is whether the State Department of Labor and Industrial Relations could act on the unlawful discharge complaint filed by Marie Flores against her former employer, United Air Lines, Inc. The Circuit Court of the First Circuit agreed with the Director of Labor and Industrial Relations that the department had no jurisdiction over the matter because United was party to a collective bargaining agreement which prevented the continued employment or reemployment of Marie Flores. Upon a review of the record and relevant statutory provisions, we conclude the director and the circuit court erred.

### I.

### A.

Hawaii Revised Statutes (HRS) § 378–32(2) renders it "unlawful for any employer to suspend, discharge, or discriminate against any of the employer's employees:

. . . .

(2) Solely because the employee has suffered a work injury which arose out of and in the course of the employee's employment with the employer and which is compensable under [the Hawaii Workers' Compensation Law] unless the employee is no longer capable of performing the employee's work as a

result of the work injury and the employer has no other available work which the employee is capable of performing."

The subsection further provides that

[a]ny employee who is discharged because of the work injury shall be given first preference of reemployment by the employer in any position which the employee is capable of performing and which becomes available after the discharge and during the period thereafter until the employee secures new employment.

The subsection, however, does

not apply to any employer in whose employment there are less than three employees at the time of the work injury or who is a party to a collective bargaining agreement which prevents the continued employment or reemployment of the injured employee[.]

## B.

Marie Flores suffered an injury to her right hand while working as a food service assistant in United's flight kitchen on August 6, 1979. She was disabled as a consequence of the work injury, was treated by a physician of her choosing, and received workers' compensation benefits from her employer through Pacific Insurance Company, who administered United's self–insured compensation plan in Hawaii. The insurance company acknowledged that she sustained a compensable injury and voluntarily paid her benefits. Her recovery from what the insurance company thought was a minor injury was slower than anticipated. Pacific therefore invoked the employer's statutory right to have her examined by a physician of its choice. The consulting physician concluded she was suffering from a carpal tunnel syndrome and recommended surgery to relieve the pain. The prescribed surgical procedure was performed by the physician in January of 1980.

He deemed Mrs. Flores fit for work on July 9, 1980. She returned to work as advised, but was soon sent home because of her complaints of disabling pain. The Workers' Compensation Division of the department then conducted a hearing and determined that Mrs. Flores was still totally disabled for work. The director therefore ordered the resumption of tem-

porary total disability compensation payments to her as of July 14, 1980. Subsequent attempts to afford Mrs. Flores relief from pain through surgery by yet another physician were unsuccessful, and her status for compensation purposes remained as "temporarily totally disabled for work."

But on March 27, 1980, United placed her on "Extended Illness Status" pursuant to Article XIV of the collective bargaining agreement between itself and the International Association of Machinists and Aerospace Workers, the exclusive bargaining representative "for all classes and grades of Cooks, Bakers, Kitchen Stewards, Pantry Workers, Food Service Assistants, and Food Service Porters employed by the Company." After the abortive return to work in July, United again placed Mrs. Flores on "Extended Illness Status" on August 19, 1980.

In May of 1982, Mrs. Flores' treating physician felt she should "return to light duty with no heavy lifting greater than 20 lbs. as of 6/3/82." United, however, was reluctant to have her return to duty. It referred Mrs. Flores for examination by another physician, whose opinion was that she would not be able to perform the work required of food service assistants. The treating physician therefore recommended the commencement of "the Vocational Rehabilitation process to find her a different kind of job."

On the strength of the medical advice that she could not return to work as a food service assistant, United informed Mrs. Flores on July 16, 1982 that "circumstances [did not] warrant any extension of extended illness status . . . ." And it advised her that "in accordance with Article XIV, Paragraph D of the 1981–83 Agreement between UAL and IAMAW, [she was being] separated from United Airlines effective August 19, 1982." Mrs. Flores and her collective bargaining representative contested the separation by filing a grievance in accord with Article XVII of the collective bargaining agreement. But the grievance was not resolved in their favor; at Step Three of the contractual procedure, United's representative denied the grievance on grounds that "the Company's actions were justified and not inappropriate under the particular circumstances . . . ." [1]

---

[1] The union and the employee could have processed the grievance through Step Four, which was resolution by the System Board of Adjustment, a step akin to arbitration.

## C.

The terminated employee then turned elsewhere for relief, filing a complaint alleging a discharge in violation of HRS § 378–32(2) with the department's Enforcement Division. Though the complaint was filed on August 12, 1982, it was not heard until a year and a half went by. In the meantime, United and Pacific Insurance gave Mrs. Flores notice, in accord with HRS § 386–31(b), of their intention to terminate the payment of compensation on October 11, 1983 because they felt she was "able to resume work." A hearing to determine whether compensation could be cut off was conducted by the Workers' Compensation Division, and the director subsequently ordered that Mrs. Flores "should remain on temporary total disability payments until the doctor rates her condition for permanent disability[.]"

The complaint was set for hearing on March 16, 1984 before the Enforcement Division's hearing officer. But two months before the scheduled hearing, Mrs. Flores' attorney wrote United, asking that she be allowed to exercise "her statutory right [under HRS § 378–32(2)] to first preference of re–employment in *any* position here which she is capable of performing and which becomes available."[2] The terse response was: "Mrs. Flores is no longer an employee of United Airlines and has exhausted all the remedies under her employment contract."

The hearing officer conducted a full hearing on the discharged employee's complaint and transmitted a recommended decision to the director, which was: "Respondent did not violate HRS Section 378–32 by discharging Complainant from employment." He reasoned that:

> The language of Article XIV, D., of the collective bargaining agreement clearly states that the Respondent has the authority to terminate an injured employee at the end of the employee's extended illness status. The facts show that Respondent did discharge Complainant, pursuant to the authority granted to Respondent in the collective bargaining agreement. Therefore,

---

[2] By this time, Mrs. Flores had completed, under the supervision of a vocational rehabilitation specialist, a vocational rehabilitation plan approved by the department and had been seeking work in clerical, sales, and related occupations.

6

the State Department of Labor does not have jurisdiction over the instant complaint.

Further, even if the State Department of Labor has jurisdiction over the subject complaint, the facts do not support Complainant's allegation that she was able to return to work with Respondent and that Respondent had available work that she can perform.

The findings made by the Disability Compensation Division at the hearing held on October 27, 1983, clearly show that Complainant was totally disabled as a result of her injury of August 6, 1979, and that she was permanently and totally disabled from employment from July 14, 1980 until the Director of Labor deems otherwise.

The director considered the objections raised by Mrs. Flores to the recommended decision, but he adopted the hearing officer's conclusion "that the Department has no jurisdiction over the claim [and did] not reach the merits of the complaint." He reasoned that

Article XIV of the collective bargaining agreement makes it clear that ill or injured employees, including employees injured as a result of employment, are subject to discharge from employment at such time that the employee's extended illness status expires. By virtue of Article XIV, Respondent is prevented from continuing to employ injured employees. Thus, section 378–32(2) would not apply to this case and the Department has no jurisdiction to apply that section to Respondent.

He also cited the failure of the union and Mrs. Flores to process her grievance through the final step, the System Board of Adjustment, in ruling the department lacked jurisdiction to apply HRS § 378–32(2) against United, stating:

In this case, the collective bargaining agreement, specifically Article XIV, clearly covers the situation where an employee is discharged because of an injury. Thus, there can be no question that Complainant's claim is a dispute arising under and concerning the interpretation of Article XIV of the Agreement. Consequently, this claim constitutes a minor dispute subject to compulsory arbitration.

Mrs. Flores moved for reconsideration of the decision, but the director stuck to his original position that he had no power to act on her complaint. He made it clear too that the decision did not include a ruling on her claim of first preference in reemployment.[3]

## D.

Mrs. Flores petitioned for judicial review of the unfavorable administrative ruling. Although it was given notice of the appeal, United chose not to appear in the circuit court. The director answered the appellant's Statement of the Case and defended his ruling.[4] The case was submitted for decision on the record made before the agency, written briefs, and oral argument.

The circuit court concluded the department had "no jurisdiction in [the] case pursuant to H.R.S. § 378–32(2), . . . the Director's finding that Appellant Flores was 'a party to a collective bargaining agreement which prevents the continued employment or reemployment of the injured employee' [was] based on substantial evidence on the whole record, and . . . the Director's decision [was] not clearly erroneous." Mrs. Flores ap-

---

[3] His letter of denial, in relevant part, stated:

Because I concluded that the Department has no jurisdiction, I did not address the merits of the complaint, which included the issue of whether United Airlines had other available work which Mrs. Flores could perform.

[4] An appeal from an administrative agency to a circuit court is governed by Hawaii Rules of Civil Procedure (HRCP) 72. "Appellee," as the term is employed in the rule, "means every governmental body or official (other than a court) whose decision, order or action is appealed from, and every other party to the proceedings." HRCP 72(a). Thus, the director was properly a party to the appeal. The definition serves a salutary purpose in cases where the agency's position would not be adequately defended by the successful party in the agency proceeding. For example, an unemployed worker who has been awarded several hundred dollars in unemployment compensation benefits would be most unlikely to have the means or the interest to defend the director's ruling in the circuit court and in an appellate court.

pealed to this court, but again United has chosen not to participate in the proceedings.

## II.

The issue before us is one of statutory interpretation. In the director's view:

> The language of the statute [in question] is clear: if the collective bargaining agreement between United Airlines and [the International Association of Machinists and Aerospace Workers] prevented the continued employment or re-employment of injured employees, [HRS §] 378–32(2) is not applicable and the Department would have no authority to exercise jurisdiction over Appellant Flores' complaint of unlawful discharge.

We agree that the language of HRS § 378–32(2) is clear; we also believe the director has stated the issue fairly. But we cannot accept his thesis that "a plain reading" of the subsection can only lead to a conclusion that he had no authority to exercise jurisdiction over Mrs. Flores' complaint. For his reading comports with neither the plain language of HRS § 378–32(2) nor its beneficent purposes.

## A.

Our analysis begins as it must with the words of HRS § 378–32(2). *State v. Lō*, 66 Haw. 653, 659, 675 P.2d 754, 758 (1983). As we noted at the outset, the subsection makes it "unlawful for [an] employer to suspend, discharge, or discriminate against [an employee because she] has suffered a [compensable work injury,] unless [she can no longer perform her] work . . . and the employer has no other available work which [she can perform.]" But the injured employee is not left without a possible remedy even when the employer can justify the discharge under the foregoing provisions of the statute. For it still entitles her to "first preference of reemployment by the employer in any position which [she] is capable of performing . . . which becomes available after the discharge[,] . . . until [she] secures . . . employment [elsewhere.]" The dual protections provided by the legislature, however, cannot be enforced against an employer who is "party to a collective bargaining agreement which prevents the

continued employment or reemployment of the injured employee[.]" HRS § 378–32(2).

The director argues a plain reading of these provisions "would lead to the result that section 378–32(2) would not apply if the collective bargaining agreement prevented either the continued employment or re-employment of the injured employee." Put another way, if the discharge of the injured employee did not violate the terms of a collective bargaining agreement, the statute would not afford her a right to subsequent reemployment. This would, of course, effectively set to naught the first preference in reemployment expressly granted employees who are discharged on account of work injuries.

## B.

The protections outlined in HRS § 378–32(2) were enacted originally as part of the Hawaii Workers' Compensation Law when a general revision of the law was approved in 1963.[5] But in 1970 a legislative perception that the Workers' Compensation Division was "neither concerned

---

[5] Act 116, Session Laws 1963, added a new section to the Workers' Compensation Law, reading:

No employer shall discharge or dismiss any employee or deny such employee the right to return to his employment solely because he suffers any work injury which is compensable under this chapter and which arises out of and in the course of employment with such employer unless it is shown to the satisfaction of the director that the employee will no longer be capable of performing his work as a result of the work injury and that the employer has no other available work which the employee is capable of performing. Any employee who is discharged or dismissed because of such work injury shall be given first preference of reemployment by the employer in any position which the employee is capable of performing and which becomes available after such dismissal or discharge and during the period thereafter until the employee secures new employment.

The foregoing provisions shall not apply to any employer in whose employment there are less than three employees or who is a party to a collective bargaining agreement which prevents the continued employment or reemployment of such injured employee.

Any employer who violates the provisions of this section shall be fined in an amount not to exceed $200 or be imprisoned for a period not to exceed ninety days or both.

with [investigation] nor staffed to carry on an enforcement program" resulted in a repeal of the provisions, then codified in HRS § 386–141, and the reenactment of "similar provisions into Part III of Chapter 378, which governs employment practices." Stand. Comm. Rep. No. 253–70, in 1970 House Journal, at 859.[6] The underlying purpose of the repeal and reenactment was to place "responsibility where it properly belong[ed]." *Id.* at 860. Inasmuch as the department was authorized under part III of HRS chapter 378 to "order the reinstatement of [an] employee with or without back pay[,]" HRS § 378–35 (1968),[7] an intended conse-

---

The section was codified as section 97–135 of the Revised Laws of Hawaii 1955, as amended, and recodified later as HRS § 386–141.

[6] The legislative committee report justified the enactment of the measure on these grounds:

Section 386–141 of the Workmen's Compensation Law makes it unlawful for an employer to discharge an employee who has suffered a work injury unless such employee is no longer capable of performing his work because of the injury and there is no other work available that he is capable of performing. The section provides penalties against offending employers, re–employment preferences for aggrieved employees, and for collective bargaining agreements which prevent continued employment and re–employment of injured employees.

However appropriate these provisions may be, they are inappropriately part of the Workmen's Compensation Law, the Workman's [sic] Compensation Division being principally concerned with determining entitlement to benefits by injured employees thereunder. On the other hand, the Labor Law Enforcement Division is principally concerned with investigation and prosecution of unlawful employment practices. The Workmen's Compensation Division is neither concerned with nor staffed to carry on an enforcement program, while the Labor Law Enforcement Division is structured so as to implement the policy and purpose of the law, and to prefer sanctioning for violations thereof in the event of unlawful suspension or discharge, which is the subject matter of Part III of Chapter 378.

Stand. Comm. Rep. No. 253–70, *supra.*

The relevant portion of part III, HRS § 378–35, then read:
If the department of labor and industrial relations finds, after a hearing, that an employer has unlawfully suspended or discharged an employee in violation of section 378–32, the department may order the reinstatement of the employee with or without back pay or may order the payment of back pay without reinstatement.

HRS § 378–35 (1968).

quence of the transfer of responsibility was that the injured employee "gain[ed], under Part III, the remedy of reinstatement in employment [in addition to that] of preference for reemployment[.]" Stand. Comm. Rep. No. 253–70, *supra*, at 860. The reenacted language thus "provide[d] penalties against offending employers, re–employment preferences for aggrieved employees, [reinstatement in employment,] and for collective bargaining agreements which prevent continued employment and re–employment of injured employees." *Id.* at 859; *see supra* note 6.

The director, however, would have us rule HRS § 378–32(2) cannot be enforced against United because the collective bargaining agreement covering employees in its flight kitchen prevented Mrs. Flores' continued employment. He maintains this ungenerous application of the statute is justified because "[t]here need not be a provision in the agreement preventing both the continued employment and reemployment of the injured employee." If we elected to approach the problem at hand in similar fashion, we could still reject the director's niggardly application of HRS § 378–32(2) because the foregoing committee report speaks of "collective bargaining agreements which prevent continued employment *and* reemployment."

But we do not find it necessary to rely on a word buried in a committee report to ascertain the intention of the legislature. We agree with Mrs. Flores that the plain language of HRS § 378–32(2) grants one whose employment has been terminated because a work injury rendered her incapable of performing work, first preference to reemployment by the employer if she regains some capacity for work and there is a job she can perform. And the preference is voided only by a provision preventing

---

It now reads:

If the department of labor and industrial relations finds, after a hearing, that an employer has unlawfully suspended, discharged or discriminated against an employee in violation of section 378–32, the department may order the reinstatement, or reinstatement to the prior position, as the case may be, of the employee with or without backpay [sic] or may order the payment of backpay [sic] without any such reinstatement.

HRS § 378–35 (1985 Replacement).

reemployment in an applicable collective bargaining agreement or when the discharged employee secures employment with another employer.

Even if it could be said that this is not clear on the face of the statute, we would still reach the same conclusion. For HRS § 378–32(2) is a remedial statute in more than one sense,[8] and therefore, "is to be construed liberally in order to accomplish the purpose for which it was enacted." *Roe v. Doe*, 59 Haw. 259, 265, 581 P.2d 310, 315 (1978) (citation omitted). Or as aptly stated by the editor of a highly regarded treatise on statutes and statutory construction, "[r]emedial statutes are liberally construed to suppress the [perceived] evil and advance the [enacted] remedy." N. Singer, *supra*, § 60.01 (footnote omitted). The director's narrow reading would impede rather than advance the remedies of preference and reinstatement in employment written by the legislature.

Since our perusal of the collective bargaining agreement between United and the International Association of Machinists has uncovered nothing preventing the reemployment of Mrs. Flores if she is capable of performing any job available in United's vast organization in Hawaii, we conclude the circuit court and the director erred in ruling the department had no jurisdiction over her complaint. Thus, we vacate the judgment of the circuit court and remand the case for entry of a judgment vacating the director's decision and order and remanding the case to the Enforcement Division of the Department of Labor and Industrial Relations for a new hearing in accord with procedures not inconsistent with this opinion.[9]

---

[8] "Generally, remedial statutes are those which provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries." N. Singer, 3 *Sutherland, Statutes and Statutory Construction* § 60.02 (4th ed. 1986) (footnote omitted). HRS § 378–32(2) undoubtedly fits this description of a remedial statute. Furthermore, it must be regarded as remedial under the following description of the term in the treatise: "Modern social legislation is generally regarded as being remedial in nature. 'Socioeconomic' legislation has been said to be entitled to a liberal construction." *Id.*

[9] Our review of the record indicates the hearing officer imposed the burden of establishing the availability of a job the complainant could perform on the complainant. It would be unrealistic to expect that a former employee would

*Douglas S. Hasegawa*, for appellant.

*Frances E. Higa Lum*, Deputy Attorney General, for Appellee Director of Labor.

---

have sufficient knowledge of the employer's operations to meet such a burden. We believe it would be more reasonable to have the employee show she is not disabled from performing work in some general areas, for example, clerical or sales, and then have the employer show there is no work available in those areas if it can.