PROGRESSIVE CASUALTY
INSURANCE COMPANY,
Plaintiff,

v.

Michele FERGUSON, in her capacity as personal representative of the Estate of David L. Ferguson, deceased, Defendant.

Civil No. 00–406SPK–BMK.

United States District Court,
D. Hawai'i.

March 23, 2001.

Richard B. Miller, Wayne H. Muraoka, Tom Petrus & Miller, Honolulu, HI, for Plaintiff.

Richard C. Monks, Century Square, Honolulu, HI, for Defendant.

## ORDER

SAMUEL P. KING, Senior District Judge.

This declaratory action presents the question of whether a territorial restriction

in a motor vehicle insurance policy is enforceable to deny uninsured motorist benefits to the policyholder. Although a number of jurisdictions have addressed this precise question, the issue is one of first impression in Hawaii. The parties in this action request that this Court draw upon the principles and policies underlying Hawaii insurance law to resolve the question, or, in the alternative, to certify the question to the Hawaii Supreme Court. For the reasons explained below, the Court finds the territorial restriction enforceable.

### FACTUAL BACKGROUND

On February 6, 2000, an unidentified motorist collided with David Ferguson ("Ferguson") while he was operating a motorcycle in Thailand. The motorist left the scene of the accident, leaving Ferguson fatally injured. Ferguson is survived by his ex-wife and personal representative of his estate, Defendant Michele Ferguson ("Defendant"), and his two children.

Ferguson is a named insured under a motor vehicle insurance policy ("Ferguson's policy" or the "Policy") issued by Plaintiff Progressive Casualty Insurance Co. ("Progressive") in the State of Hawaii. The Policy provided, among other things, uninsured motorist ("UM") coverage of $300,000 per person and was in effect at the time of the accident. Under the Policy, Progressive would pay for damages "1. sustained by an **insured person; 2.** caused by **accident;** and 3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle.**" Progressive Hawaii Motor Vehicle Policy (9/97) at 23, Exh. 7 to Def.'s Mot. Summ. J. (emphasis in original). Defendant filed a claim for UM benefits on Ferguson's behalf. Progressive denied the claim on the basis of a territorial restriction contained within the "General Provisions" section of the Policy, which reads as follows:

### POLICY PERIOD AND TERRITORY

This policy applies only to **accidents** and **losses** occurring during the policy period shown on the **Declarations Page** and which occur within any state, territory, or possession of the United States of America, or any province of Canada, or while a **covered vehicle, non-owned vehicle,** or **trailer** is being transported between their ports.

*Id.* at 41 (emphasis in original). Since Thailand is not within the territorial limits stated in the Policy, Progressive maintains it is not legally obligated to pay UM benefits to Defendant. Progressive brought this action to obtain declaratory relief to that effect.

Defendant has moved for summary judgment determination that the Policy's territorial restriction is unenforceable as a matter of law because it conflicts with Hawaii's public policy regarding UM insurance as articulated in the Hawaii Insurance Code and Hawaii case law. Defendant submits that in the alternative, if this Court were to determine that Hawaii law does not give clear guidance on the issue, a question of law should be certified to the Hawaii Supreme Court. Progressive opposes Defendant's motion for summary judgment and certification, and has filed a cross-motion for summary judgment.

### STANDARD

In considering a motion for summary judgment, the Court must determine whether there is an absence of a genuine issue of material fact viewing the facts in the light most favorable to the nonmoving party. *Holihan v. Lucky Stores, Inc.,* 87 F.3d 362, 366 (9th Cir.1996); Fed.R.Civ.P. 56(c). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving

party meets that burden by showing that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. Once the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 323–24, 106 S.Ct. 2548. "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)) (internal quotation marks omitted).

## DISCUSSION

### I. HAWAII INSURANCE LAW

 Federal courts sitting in diversity apply state substantive law and federal procedural law. *Snead v. Metropolitan Property & Casualty Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir.2001) (citing *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). When interpreting state law, a federal court is bound by the decisions of a state's highest court. *Arizona Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir.1995). "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id.* (citing *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990)).

 The starting point for analyzing the enforceability of the territorial restriction in Ferguson's policy is the Hawaii Insurance Code ("Insurance Code"). In re-

gards to UM insurance, the Insurance Code states:

> (b) A motor vehicle insurance policy shall include:
>
> . . . .
>
> (3) With respect to any motor vehicle registered or principally garaged in this State, liability coverage provided therein or supplemental thereto, in limits for bodily injury or death set forth in paragraph (1) ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided. that the coverage required under this paragraph shall not be applicable where any named insured in the policy shall reject the coverage in writing . . . .

Haw.Rev.Stat. § 431:10C–301(b)(3). Another subsection of the same statute provides:

> An insurer shall offer the insured the opportunity to purchase uninsured motorist coverage and underinsured motorist coverage by offering the following options with each motor vehicle insurance policy:
>
> (1) The option to stack uninsured motorist coverage and underinsured motorist coverage; and
>
> (2) The option to select uninsured motorist coverage and underinsured motorist coverage, whichever is applicable, up to but not greater than the bodily injury liability coverage limits in the insured's policy.

*Id.* § 431:10C–301(d). The two provisions above mandate that insurers offer insured motorists the option of purchasing UM insurance. However, the Insurance Code is silent about whether territorial restrictions are valid. Thus, the Insurance Code is not dispositive of the issue at hand.

■ The Court turns next to Hawaii case law for guidance. The Hawaii Supreme Court has articulated rules for construing the scope and nature of insurance policies in general, and UM insurance coverage in particular. The court has instructed that insurance policies are to be interpreted according to general rules of contract construction; that is, "according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended ...." *First Ins. Co. of Hawai'i, Inc. v. State,* 66 Haw. 413, 423–24, 665 P.2d 648, 655 (1983) (citations omitted). Each insurance contract is to be construed according to the entirety of its terms and conditions as set forth in the policy. *State Farm Mut. Auto. Ins. Co. v. Fermahin,* 73 Haw. 552, 556, 836 P.2d 1074, 1077 (1992) (citing Haw.Rev.Stat. § 431:10–237). Because insurance policies are contracts of adhesion, they must be construed liberally in favor of the insured, with any ambiguities resolved against the insurer. *Sturla, Inc. v. Fireman's Fund Ins. Co.,* 67 Haw. 203, 209, 684 P.2d 960, 964 (1984). In addition, insurance policies are governed by statutory requirements in force such that "[w]hen the terms of an insurance contract are in conflict with statutory language, the statute must take precedence over the terms of the contract." *Sol v. AIG Hawaii Ins. Co.,* 76 Haw. 304, 306, 875 P.2d 921, 923, *recon. denied,* 76 Haw. 353, 877 P.2d 890 (1994); *AIG Hawai'i Ins. Co., Inc. v. Estate of Caraang,* 74 Haw. 620, 633, 851 P.2d 321, 328 (1993). Most germane to this case is the principle that " 'liability insurers have the same right as individuals to limit their liability, and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy.' " *First Ins.,* 66 Haw. at 423, 665 P.2d at 655 (quoting 6B Appleman, *Insurance Law and Practice* § 4255, at 40 (1979)).

■ The Hawaii Supreme Court also has fashioned a body of rules specifically addressing the nature and limits of UM insurance. The court regards the UM insurance statute, Haw.Rev.Stat. § 431:10C–301, as a remedial statute that is "to be construed liberally in order to accomplish the purpose for which it was enacted." *Flores v. United Air Lines, Inc.,* 70 Haw. 1, 12, 757 P.2d 641, 647 (1988) (citations and internal quotation marks omitted). The court has consistently applied this rule in cases concerning the scope of UM coverage. A cardinal principle of UM insurance law in Hawaii is that UM insurance is personal to the insured and, consequently, UM coverage follows the insured's person. *Dawes v. First Ins. Co. of Hawai'i, Ltd.,* 77 Haw. 117, 123, 883 P.2d 38, 44, *recon. denied,* 77 Haw. 489, 889 P.2d 66 (1994); *Palisbo v. Haw. Ins. & Guar. Co., Ltd.,* 57 Haw. 10, 15, 547 P.2d 1350, 1354 (1976). Thus, an insured under a UM policy is entitled to recover UM insurance benefits even though he or she was injured while operating a vehicle not covered by the policy, *Allstate Ins. Co. v. Morgan,* 59 Haw. 44, 47–48, 575 P.2d 477, 479–80 (1978), or while occupying a vehicle not declared in the policy. *Methven–Abreu v. Hawaiian Ins. & Guar. Co., Ltd.,* 73 Haw. 385, 396–98, 834 P.2d 279, 285–86 (1992); *Kau v. State Farm Mut. Auto. Ins. Co.,* 58 Haw. 49, 51, 564 P.2d 443, 444 (1977). Entitlement to UM benefits does not even require that there have been physical contact between the insured and the uninsured motorist. *DeMello v. First Ins. Co. of Hawai'i, Ltd.,* 55 Haw. 519, 524, 523 P.2d 304, 307 (1974). In addition, a person can recover UM benefits without occupying an insured vehicle at the time of injury even if he or she is not the named insured or a member of the insured's family. *National Union Fire Ins. Co. v. Olson,* 69 Haw. 559, 563–64, 751 P.2d 666, 668–69 (1988), *overruled in part by Dawes,* 77

Haw. 117, 883 P.2d 38. A further illustration of the policy favoring a broad construction of the scope of UM coverage is found in the Hawaii Supreme Court's adoption of the "chain of events" test to delimit the proximity between the insured vehicle and the accident site allowable to trigger coverage. *Dawes*, 77 Haw. at 132, 883 P.2d at 53. This test would find UM coverage where the claimant, who is not a named insured, exits from an insured vehicle being driven by the insured or a family member of the insured, and is struck by an uninsured motorist after walking a mile away from the vehicle, so long as the operation of the vehicle and the injury are part of the same chain of events.[1] *Id.*

Inasmuch as the foregoing survey of Hawaii case law illuminates the approach the Hawaii Supreme Court might take in analyzing a territorial restriction such as the one in Ferguson's policy, it does not provide this Court with definitive rules to decide the enforceability of the restriction. Existing case law focuses primarily on the proper logical construct of the physical proximity between the injury and the insured vehicle that gives rise to coverage.[2] *Dawes*, 77 Haw. at 136, 883 P.2d at 57 (Moon, C.J., dissenting). In contrast, the restriction here imposes a limit on the territorial scope of coverage, not a limit on the distance there can be between the claimant and the insured vehicle for UM coverage to arise. None of Hawaii's UM

cases discusses the validity of a territorial restriction.

■ Given the absence of dispositive authority on the issue, this Court must predict how the Hawaii Supreme Court would rule if the issue were put before it. *Arizona Elec.*, 59 F.3d at 991. The Court returns to the general rules of insurance contract interpretation enunciated by the Hawaii Supreme Court. The rule most relevant to this case holds that insurers have the same right as individuals to limit their liability, subject to statutory and public policy prohibitions. *First Ins.*, 66 Haw. at 423, 665 P.2d at 655. Pursuant to this rule, the territorial restriction in Ferguson's insurance policy is enforceable unless it contravenes provisions of the Insurance Code or public policy.

■ A review of the relevant statutory provisions, legislative history, and case law reveals two public policies underlying Hawaii insurance law that are instructive as to how this case should be decided. The first is the policy of placing UM coverage on equal footing with no-fault coverage. The Insurance Code requires insurers to offer optional UM coverage *"in limits for bodily injury or death* set forth in [Haw. Rev.Stat. § 431:10C–301(b)(1).]" Haw. Rev.Stat. § 431:10C–301(b)(3) (emphasis added). A companion provision in the Insurance Code mandates that insurers give

---

1. The precise formulation of the test is as follows:

(1) if a person was a passenger in an insured vehicle being operated by a named insured or a named insured's family member, (2) during the chain of events resulting in injury to the person caused by an accident involving an uninsured motor vehicle, (3) then the person is a "covered person" at the time of his or her injury to the same extent as the named insured or the named insured's family members would be entitled to receive UM benefits under the applicable UM policy.

*Dawes*, 77 Haw. at 133, 883 P.2d at 54.

2. The Hawaii Supreme Court has repeatedly cited a Connecticut case for the following statement of law: "Uninsured motorist statutes place no geographical limits on coverage and do not purport to tie protection against uninsured motorists to occupancy of an insured vehicle." *Dawes*, 77 Haw. at 124, 883 P.2d at 45 (quoting *Harvey v. Travelers Indem. Co.*, 188 Conn. 245, 449 A.2d 157, 160 (1982)). "Geographical limit" refers to the proximity between the covered person and the site of injury.

insureds under a motor vehicle insurance policy "[t]he option to select uninsured motorist coverage ... up to but not greater than the bodily injury liability coverage limits in the insured's policy." *Id.* § 431:10C–301(d)(2). The Insurance Code thus requires that UM coverage be coextensive with liability coverage. *See Palisbo,* 57 Haw. at 15, 547 P.2d at 1354 ("The [UM] statute was clearly designed to enable the purchaser of [UM] insurance to assure himself and the members of his household of not less than the minimum protection provided for the general public in the financial responsibility law."). The Hawaii Supreme Court has consistently applied this principle to strike down exclusions that attempt to make UM insurance less extensive than other types of coverage in motor vehicle insurance policies. *See, e.g., Sol,* 76 Haw. 304, 875 P.2d 921 (voiding provision of an auto policy that reduced UM benefits by the amount of no-fault benefits an insured receives); *Walton v. State Farm Mut. Auto. Ins. Co.,* 55 Haw. 326, 518 P.2d 1399 (1974) (voiding "other insurance" clause of an auto policy that limited recovery of UM benefits to less than actual damages or the limit of liability stated in the policy).

By inference, a territorial restriction is valid if it does not attempt to limit UM coverage to an area less extensive than other coverages in a motor vehicle insurance policy. This is the approach taken by the vast majority of jurisdictions that have addressed the enforceability of territorial restrictions on UM coverage. *See Curtis v. Allstate Ins. Co.,* 631 F.2d 79 (5th Cir. 1980); *Robles v. California State Auto. Ass'n,* 79 Cal.App.3d 602, 145 Cal.Rptr. 115 (1978); *Cassingham v. Nationwide Gen. Ins. Co.,* No. Civ. A. 90–10–244, 1991 WL 236917 (Del.Super.Ct. Nov.8, 1991); *Fischer v. State Farm Mut. Auto. Ins.,* 495 So.2d 909 (Fla.Dist.Ct.App.1986); *Degollado v. Gallegos,* 260 Kan. 169, 917 P.2d 823 (1996); *Higbee v. USAA Cas. Ins. Co.,* 617 So.2d 51 (La.Ct.App.), *cert. denied,* 619 So.2d 551 (La.1993); *Brillo v. Hesse,* 560 So.2d 84 (La.Ct.App.), *cert. denied,* 564 So.2d 329 (1990); *Heinrich–Grundy v. Allstate Ins. Co.,* 402 Mass. 810, 525 N.E.2d 651 (1988); *Smith v. Illinois Farmers Ins. Co.,* 455 N.W.2d 499 (Minn.Ct.App.1990); *State Farm Auto. Ins. Co. v. Cabuzzi,* 123 N.H. 451, 462 A.2d 129 (1983); *Prudential Prop. & Cas. Ins. Co. v. Myers,* 232 N.J.Super. 455, 557 A.2d 686 (App.Div. 1989); *Dominguez v. Dairyland Ins. Co.,* 123 N.M. 448, 942 P.2d 191 (App.), *cert. denied,* 123 N.M. 446, 942 P.2d 189 (1997); *Pollard v. Hartford Ins. Co.,* 583 A.2d 79 (R.I.1990); *Marchant v. South Carolina Ins. Co.,* 281 S.C. 585, 316 S.E.2d 707 (App.1984); *Lovato v. Liberty Mut. Fire Ins. Co.,* 109 Wash.2d 43, 742 P.2d 1242 (1987); *Hillmer v. Integrity Mut. Ins. Co.,* No. 91–2888, 1992 WL 348292 (Wis.Ct. App. Aug.4, 1992); *see also Hall v. Amica Mut. Ins. Co.,* 538 Pa. 337, 648 A.2d 755 (1994) (upholding restriction on other grounds); *Ashe v. United Servs. Auto. Ass'n,* No. 94–1326, 1995 WL 94446 (Wis. Ct.App. March 9, 1995) (upholding territorial restriction on UM coverage stricter than territorial restriction on liability coverage). Even those courts refusing to enforce territorial restrictions on UM coverage have done so because the restrictions before them were more limited than other coverages in the policy. *See Bartning v. State Farm Fire & Cas. Co.,* 162 Ariz. 344, 783 P.2d 790 (1989); *Mission Ins. Co. v. Brown,* 63 Cal.2d 508, 47 Cal.Rptr. 363, 407 P.2d 275 (1965) (in bank). Based on the language of section 431:10C–301(d)(2) of the Insurance Code and Hawaii case law dealing with exclusions on UM coverage, this Court is persuaded that the Hawaii Supreme Court would join its sister jurisdictions in upholding a territorial restriction in a motor vehicle insurance policy that makes the territorial scope of UM

coverage coextensive with the territorial scope of other coverages in the policy.

The territorial restriction in Ferguson's policy indiscriminately applies to all coverages in the Policy. As such, the territorial restriction does not attempt especially to restrict UM coverage. The Hawaii Supreme Court would likely uphold such a restriction.

■ A second policy rationale warrants finding the territorial restriction in the Policy enforceable. Both the Hawaii legislature and the Hawaii Supreme Court have expressed that stabilizing the cost of motor vehicle insurance is an objective of Hawaii's regulation of the insurance industry. The aim of keeping insurance rates low permeates the legislative history underlying the Insurance Code. One of the objectives of the Hawaii No–Fault Law was to "reduce the cost of motor vehicle insurance by establishing a uniform system of motor vehicle insurance." House Joint Stand. Comm. Rep. No. 187, 7th Leg., Reg. Sess. (1973), *reprinted in* 1973 Haw. House J. at 836; *see also* Act 245, § 1, 1973 Haw. Sess. Laws 518, 519; Sen. Stand. Comm. Rep. No. 402, 7th Leg., Reg. Sess. (1973), *reprinted in* 1973 Haw. Sen. J. at 817; Conf. Comm. Rep. No. 4, 7th Leg., Reg. Sess. (1973), *reprinted in* 1973 Haw. Sen. J. at 635; Conf. Comm. Rep. No. 13, 7th Leg., Reg. Sess. (1973), *reprinted in* 1973 Haw. House J. at 1219. In 1985, commenting on amendments to the Insurance Code, the Hawaii Senate Committee on Consumer Protection and Commerce remarked: "The purpose of this bill is in line with the overall intent of the no-fault law to provide speedy and adequate protection to persons injured in motor vehicle accidents at the least possible cost." Sen. Stand. Comm. Rep. No. 689, 13th Leg., Reg. Sess. (1985), *reprinted in* 1985 Haw. Sen. J. at 1181. The Senate Committee further stated that in setting premium rates, the insurance commission-

er should be allowed to determine "a rate which would give the consumer a low cost auto insurance and the insurance company a reasonable margin of profit." *Id.* Similarly, the Hawaii Supreme Court has acknowledged that one of the legislature's original and continuing objectives in regulating the insurance industry is to reduce motor vehicle insurance costs to the public. *Methven–Abreu,* 73 Haw. at 393–94, 834 P.2d at 284; *National Union Fire Ins. Co. v. Ragil,* 72 Haw. 205, 215, 811 P.2d 473, 478 (1991), *overruled on other grounds, Dines v. Pacific Ins. Co.,* 78 Haw. 325, 893 P.2d 176, *recon. denied,* 78 Haw. 474, 896 P.2d 930 (1995).

Serious impacts on the cost of UM insurance would result if territorial restrictions were held to be unenforceable per se. The rates for UM insurance are based on relatively uniform legal systems in the United States and the ascertainable costs and risks associated with accidents that occur within a policy's stated territorial limits. *See Higbee,* 617 So.2d at 56. By limiting coverage to known or measurable risks—i.e., to specified geographic areas amenable to risk calculation and claim investigation—insurance companies can contain the cost of UM insurance. On the other hand, precluding the enforcement of territorial restrictions essentially amounts to mandatory worldwide UM coverage, which in turn would cause UM insurance rates to destabilize and inevitably rise. Insuring against accidents that occur worldwide, as opposed to accidents occurring within a specified territorial boundary, is undoubtedly more complex in the actuarial sense. An insurer offering worldwide UM insurance must account for risks unique to each country, as well as the cost of investigating claims in countries with different laws, law enforcement systems, and languages. There is no question that UM insurance will become more expensive if insurers are prohibited from re-

stricting the territorial boundaries of UM coverage in the policies they issue. Such a result defeats the public policy of reducing insurance rates so prevalent in the Insurance Code.

Based on the foregoing, the Court concludes that the Hawaii Supreme Court would hold that the territorial restriction in Ferguson's policy is enforceable. Progressive has a right to limit its liability. Progressive exercised that right, by including a territorial restriction in the Policy, in a manner that did not contravene any statutory or public policy prohibitions. The restriction does not limit UM coverage to a territorial scope narrower than that of other coverages in the Policy, and thus, it comports with the public policy of ensuring that UM coverage be coextensive with other types of coverage. The restriction also serves the policy of reducing insurance rates by limiting UM coverage such that the scope of risk against which Progressive must insure is broad enough to include most accidents involving uninsured motorists while limited enough to be capable of measurement. Moreover, the restriction in the Policy is clear and unambiguous on its face. This Court holds that the restriction is enforceable as a matter of law. Since Ferguson's accident occurred in Thailand, a country outside of the territorial limit of the Policy, Progressive is not legally obligated to pay the UM benefits claimed.

## II. *CERTIFICATION*

 Defendant alternatively moves for certification of the issue to the Hawaii Supreme Court. A federal district court may certify to the Hawaii Supreme Court a question concerning Hawaii law for which "there is no clear controlling precedent in the Hawaii judicial decisions . . . ." Haw. R.App. P. 13(a). Certification of a question of state law to state courts is not obligatory, but rests in the sound discretion of the federal court. *Lehman Bros. v.*

*Schein,* 416 U.S. 386, 390–91, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974). In light of the clear majority rule governing this issue and the harmony between the rule and existing Hawaii insurance law, the Court denies the request for certification. The certification process will unduly delay the resolution of this suit. Furthermore, the Court notes that if Defendant decides to appeal this Court's ruling, she may request that the Ninth Circuit Court of Appeals certify a question.

### CONCLUSION

Defendant's motion for summary judgment is DENIED and Progressive's cross-motion for summary judgment is GRANTED. The Clerk of the Court is instructed to enter judgment in favor of Progressive.

IT IS SO ORDERED.