924 So.2d 842 (2006)
AUTO-OWNERS INSURANCE COMPANY, Appellant,
v.
ABOVE ALL ROOFING, LLC, a Florida Limited Company; Jacek Loskot; and Jolnta Loskot, Appellees.
No. 2D05-236.
District Court of Appeal of Florida, Second District.
January 13, 2006.
David A. Finlay of Law Office of Robert A. Dalessio, Tampa, for Appellant.
*843 Michael D. Allweiss, St. Petersburg, for Appellees.
LaROSE, Judge.
Auto-Owners Insurance Company appeals the trial court's entry of a summary declaratory judgment in favor of Above All Roofing, LLC, and Jacek and Jolnta Loskot. The trial court ruled that Jacek Loskot, an Above All Roofing employee, was covered under his employer's uninsured motorist (UM) policy for injuries he suffered in an automobile accident. We reverse.
Mr. Loskot was driving a van owned by Above All Roofing and insured by Auto-Owners. While driving onto the interstate in Pinellas County, Mr. Loskot collided with a car driven by Robin L. Conyers. After impact, Ms. Conyers stopped her car in the right emergency lane. Mr. Loskot pulled over to the left, stopped his van in the median, and exited the van. He crossed the road and stood next to Ms. Conyers' car to render assistance and exchange driver information. While standing next to Ms. Conyers' car, Mr. Loskot was struck by a third vehicle driven by an uninsured motorist.
Auto-Owners denied Mr. Loskot's claim for UM benefits under Above All Roofing's policy. Auto-Owners concluded that Mr. Loskot was a pedestrian when injured and was not occupying or getting into or out of his van. The Loskots and Above All Roofing filed suit seeking a determination that Mr. Loskot was entitled to UM benefits.
In the lawsuit, Mr. Loskot alleged that he was injured while operating his employer's van. The parties stipulated that Mr. Loskot left the van to exchange information with Ms. Conyers, in compliance with sections 316.027 and 316.062, Florida Statutes (2002)[1]; Mr. Loskot was struck by the third vehicle while fulfilling those obligations.[2]
After hearing argument on cross-motions for summary judgment, the trial court ruled that (1) the UM coverage provisions of the Auto-Owners policy were ambiguous, and (2) because Mr. Loskot was performing his statutory duties when injured, he was entitled to UM benefits under the policy.
In reviewing the trial court's ruling on a motion for summary judgment, we apply a de novo standard. See Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001). Similarly, the trial court's interpretation of an insurance policy to determine coverage is a matter of law also subject to our de novo review. Meyer v. *844 Hutchinson, 861 So.2d 1185, 1187 (Fla. 5th DCA 2003); Barnier v. Rainey, 890 So.2d 357, 359 (Fla. 1st DCA 2004) (addressing UM policy construction).
Auto-Owners' policy section II, Liability Coverage, addresses liability for bodily injury or property damage arising from Above All Roofing's ownership, maintenance, or use of its insured vehicles:

SECTION IILIABILITY COVERAGE
1. COVERAGE
a. Liability CoverageBodily Injury and Property Damage
We will pay damages for bodily injury and property damage for which you become legally responsible because of or arising out of the ownership, maintenance or use of your automobile (that is not a trailer) as an automobile. We will pay such damages:
(1) on your behalf;
(2) on behalf of any relative using your automobile (that is not a trailer);
(3) on behalf of any person using your automobile (that is not a trailer) with your permission or that of a relative; and
(4) on behalf of any person or organization legally responsible for the use of your automobile (that is not a trailer) when used by you, a relative, or with your permission or that of a relative.
. . . .
2. EXCLUSIONS
Liability Coverage does not apply:
. . . .
j. to any expenses that would be payable under any workers compensation law, unemployment compensation or disability benefits law or under any similar law.
The Loskots and Above All Roofing did not sue for coverage under section II. Rather, they sought benefits under the UM provisions of the policy:
2. COVERAGE
We will pay damages any person is legally entitled to recover from the owner or operator of an uninsured automobile because of bodily injury sustained while occupying or getting into or out of an automobile that is covered by SECTION IILIABILITY COVERAGE of the policy.

a. If the first named insured in the Declaration is an individual, this coverage is extended as follows:
(1) We will pay damages you are legally entitled to recover from the owner or operator of any uninsured automobile because of bodily injury you sustain:
(a) when you are a pedestrian; or
(b) when occupying an automobile you do not own which is not covered by SECTION IILIABILITY COVERAGE of the policy.
(Emphasis added.)
Because Mr. Loskot was not a first named insured, he was not entitled to UM benefits as a pedestrian under section 2(a)(1)(a). See Travelers Ins. Co. v. Bartoszewicz, 404 So.2d 1053, 1054-55 (Fla. 1981) (stating that declaration of corporation as named insured does not render employees named insureds). Instead, he seeks UM benefits as a class II insured who suffered injuries while occupying or getting into or out of Above All Roofing's insured van.[3] The Auto-Owners policy defines *845 "occupying" as "in or upon, entering into or alighting from."
UM coverage exclusions for claimants who were not physically occupying the insured vehicle when injured are enforceable and do not violate public policy.
It is apparent that the public policy of this state is to require that named and other Class I insureds who own the vehicle or actually purchased the policy have the benefit of full and unrestricted uninsured motorist coverage .... On the other hand, the public policy of this state has not been offended by a more limited coverage in situations involving Class II or additional insureds. The cases interpreting those situations have all permitted the issuance of policies that restrict the coverage to injuries or death that occur while the insured is occupying the vehicle.
Alamo Rent-A-Car v. Hayward, 858 So.2d 1238, 1241-42 (Fla. 5th DCA 2003). See also Mullis v. State Farm Mut. Auto. Ins. Co., 252 So.2d 229 (Fla.1971); Davis v. Fireman's Fund Ins. Co., 463 So.2d 1191 (Fla. 2d DCA 1985); Fenwick v. Am. States Ins. Co., 520 So.2d 98-99 (Fla. 4th DCA 1988).
Velasquez v. American Manufacturers Mutual Insurance Co., 387 So.2d 427 (Fla. 3d DCA 1980), is instructive. Mr. Velasquez' minor son was driving a rental car when it broke down. The son was struck and injured while walking to a service station. He sought benefits from the rental company's UM carrier. The son was not entitled to UM benefits because he was a Class II insured and was not occupying the car when he was injured.
By special provision of the policy, uninsured motorist protection was extended to any person while occupying the insured automobile. This provision did not limit the statutorily required coverage to owners but was in addition thereto. Neither this court nor the trial court is authorized to extend coverage beyond the plain language of the policy in the absence of ambiguity, waiver, estoppel, or contradiction of public policy. . . . None of these exceptions were proved in the trial court.
Id. at 428 (construing Mullis, 252 So.2d 229).
Here, Auto-Owners issued its policy to Above All Roofing, not to Mr. Loskot. The policy extended UM coverage to any person while occupying or getting into or out of the insured van. This provision added to, rather than limited, the statutorily required owner's coverage. See § 627.727(1), Fla. Stat. (2002); Velasquez, 387 So.2d at 428. Mr. Loskot was not physically occupying or getting into or out of the vehicle when he was struck by the uninsured motorist. As in Velasquez, coverage cannot extend beyond the plain language of the Auto-Owners policy.
UM coverage has been extended to Class II claimants who were injured while touching or standing in close proximity to the insured vehicle. See, e.g., Asnip v. Hartford Accident & Indem. Co., 446 So.2d 1121 (Fla. 3d DCA 1984) (holding driver leaning against vehicle when struck by hit-and-run car was at least "upon" the vehicle and thus "occupying" it, where policy defined "occupying" as "in, upon, getting in, on, out or off" a vehicle); Progressive Am. Ins. Co. v. Tanchuk, 616 So.2d *846 489 (Fla. 4th DCA 1993) (holding tow truck driver was "occupying" insured tow truck when uninsured vehicle struck driver while hooking disabled vehicle to tow truck); Indus. Fire & Cas. Ins. Co. v. Collier, 334 So.2d 148, 149-50 (Fla. 3d DCA 1976) (holding person changing tire on vehicle was "occupying" it where policy defined "occupying" as "in or upon, or entering into, or alighting from a motor vehicle").
The facts of this case do not present a "close proximity" situation as in Tanchuk. Mr. Loskot left the insured van and was standing on the other side of the road when struck. In Allstate Insurance Co. v. Thomas, 668 So.2d 1038 (Fla. 4th DCA 1996), the Fourth District reversed a finding of UM coverage where the "decedent had already completed alighting from the insured vehicle, had walked to the rear of the disabled vehicle which was parked behind it, and was waiting to unload [it]" when he was struck and killed. Id. at 1039. Relying on Tanchuk, the Fourth District concluded that the employee "had simply gone too far from the insured vehicle in this case to be an occupant of it." Id.
Other Florida cases have declined to extend UM protection to Class II claimants who were not at least touching or in close proximity to the insured vehicle at the time of injury.[4] In Fidelity & Casualty *847 Co. of New York v. Garcia, 368 So.2d 1313 (Fla. 3d DCA 1979), the court construed the term "occupying," which included the term "alighting from," as limited to "the time and place at which the insured shows an intention, evidenced by an overt act based on that intention, to undertake a new direction or activity." Id. at 1315. The court held that there was no UM coverage for the Class II insured because, at the time she had exited the vehicle, she was engaged in a new activity of walking toward her home. Id. at 1315.
Similarly, in State Farm Mutual Automobile Insurance Co. v. Yanes, 447 So.2d 945 (Fla. 3d DCA 1984), the Third District held that a delivery van operator was not an insured under the UM policy because he "had ceased the activity of `alighting from' the truck and had commenced the new activity of walking across the street" when he was injured after exiting the vehicle and unloading a package. Id. at 946.
In Davis v. Fireman's Fund Insurance Co., 463 So.2d 1191 (Fla. 2d DCA 1985), we held that a tow truck operator who was changing a tire on a disabled vehicle, away from his employer's tow truck, when struck and killed by an uninsured motorist was not "occupying" the tow truck, and, thus, was not covered by his employer's UM policy. Id. at 1192. Davis, as well as decisions of other Florida appellate courts, dictates that Mr. Loskot, who was not in the insured van, touching it, or otherwise in close proximity to it, cannot successfully claim UM benefits under the Auto-Owners policy. Nonetheless, the Loskots and Above All Roofing argue that because the policy does not define the term "occupying" adequately, a latent linguistic ambiguity demands a liberal interpretation of the policy in favor of coverage. The failure to define a term, however, does not necessarily render the term ambiguous. Swire Pacific Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 166 (Fla.2003); Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1139 (Fla.1998); Gen. Star Indem. Co. v. W. Fla. Village Inn, Inc., 874 So.2d 26, 30 (Fla. 2d DCA 2004). "The policy language should be read `as it would be understood by reasonable people, i.e. given its plain and ordinary meaning.'" Wright v. Auto-Owners Ins. Co., 739 So.2d 180 (Fla. 2d DCA 1999) (quoting Deni Assocs. of Fla., 678 So.2d 397 (Fla. 4th DCA 1996), aff'd, 711 So.2d 1135 (Fla.1998)); see also Gen. Star Indem. Co., 874 So.2d at 29. When the insurer has not defined a term, the common definition of the term should prevail. Pompano Motor Co. v. Chrysler Ins. Co., 875 So.2d 754, 757 (Fla. 4th DCA 2004) (citing Great Am. Ins. Cos. v. Souza, 855 So.2d 187, 188-89 (Fla. 4th DCA 2003)). Webster's Dictionary defines "occupy" as "to fill up (a place or extent)." Webster's Third New Int'l Dictionary Unabridged 1561 (1986). We cannot conclude that the policy language is ambiguous. Precedent and common sense demonstrate that Mr. Loskot was not getting into, out of, or otherwise occupying his employer's van when hit by an uninsured motorist.
The Loskots and Above All Roofing argue that "common sense suggests most people would believe they would be covered if they were injured while obeying the law." They contend that this case is unique because, when struck by the uninsured motorist, Mr. Loskot was complying *848 with his statutory duty to exchange information and render aid. See §§ 316.027, 316.062. Thus, they maintain, we should deem Mr. Loskot to have been "occupying" the insured van by virtue of fulfilling a statutory obligation, albeit at some distance from the insured vehicle. The supreme court, however, has rejected "the doctrine of reasonable expectations." Deni Assocs. of Fla., 711 So.2d at 1140. And, we are aware of no Florida decision that would expand UM coverage as broadly as urged by the Loskots and Above All Roofing. But see West Am. Ins. Co. v. Lovett, 519 So.2d 39 (Fla. 5th DCA 1987) (considering claimant's argument for UM benefits based on compliance with sections 316.027 and 316.062(1), where uninsured motorist struck and killed claimant who exited car to help injured bicyclist; holding no coverage because claimant was not involved in bicycle accident, had no statutory obligation to stop, and was not occupying the insured vehicle when injured).
Although the Loskots and Above All Roofing argue that denying UM coverage conflicts with the public policy expressed in sections 316.027 and 316.062(1), the decision to extend UM coverage under such circumstances is a legislative matter. We must decline the invitation to expand the clear language contained in a contract of insurance to provide UM coverage under these facts.
Reversed.
ALTENBERND and NORTHCUTT, JJ., Concur.
NOTES
[1] 316.027 Crash involving death or personal injuries. 

(1)(a) The driver of any vehicle involved in a crash resulting in injury of any person must immediately stop the vehicle at the scene of the crash, or as close thereto as possible, and must remain at the scene of the crash until he or she has fulfilled the requirements of s. 316.062 ....
316.062 Duty to give information and render aid. 
(1) The driver of any vehicle involved in a crash resulting in injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person shall give his or her name, address, and the registration number of the vehicle he or she is driving, and shall upon request and if available exhibit his or her license or permit to drive, to any person injured in such crash or to the driver or occupant of or person attending any vehicle or other property damaged in the crash and shall give such information and, upon request, exhibit such license or permit to any police officer at the scene of the crash or who is investigating the crash....
[2] The record does not indicate whether Mr. Loskot had UM coverage under any personal automobile policy and, if so, whether he made a claim. The record is also silent as to whether he received worker's compensation benefits.
[3] "Class I includes the named insured and family members who receive UM coverage both as occupants of a vehicle and in other circumstances. Class II insureds include all other passengers in the vehicle who are covered only by virtue of the fact that they occupy the covered vehicle." Alamo Rent-A-Car, Inc. v. Hayward, 858 So.2d 1238, 1240 (Fla. 5th DCA 2003) (citing Travelers Ins. Co. v. Warren, 678 So.2d 324 (Fla.1996)); see also Varro v. Federated Mut. Ins. Co., 854 So.2d 726, 728 (Fla. 2d DCA 2003).
[4] A number of jurisdictions are aligned with Florida. See Jay M. Zitter, Annotation, What Constitutes Occupancy of Motor Vehicle for Purposes of No-Fault Automobile Insurance Coverage, 35 A.L.R.4th 364 (2005); Genthner v. Progressive Cas. Ins. Co., 681 A.2d 479, 481-82 n. 2 (Me.1996). Other jurisdictions have extended the definition of "occupying" for UM purposes much further. See id. at 480-81 n. 1; Progressive Cas. Ins. Co. v. Ferguson, 134 F.Supp.2d 1159 (D.Haw.2001) (holding UM coverage where claimant, not a named insured, exited insured vehicle and was struck by uninsured motorist after walking a mile away from vehicle, where operation of vehicle and injury were part of same chain of events); Wolf v. Am. Cas. Co. of Reading, Pa., 2 Ill.App.2d 124, 118 N.E.2d 777 (1954) (holding driver who exited car after traffic accident to exchange information was "occupying" insured car when struck by third, uninsured motorist as he stopped to write down his own license plate number); White v. Williams, 563 So.2d 1316, 1318 (La. App.1990) (passenger who exited car to pay convenience store cashier for gas was "occupying" car when uninsured motorist struck him as he crossed parking lot to get back into car, under "relationship test": "His physical departure was solely for the purpose of performing an act that was physically and directly related to the car"); Radmann v. Truck Ins. Exch., 660 So.2d 975, 977 (Miss.1995) (under Wisconsin law, truck driver who exited his vehicle in parking lot and started to cross highway was still "vehicle-oriented" and thus was "occupying" truck when struck by uninsured motorist); Newcomb Hosp. v. Fountain, 141 N.J.Super. 291, 357 A.2d 836, 838 (1976) (holding passenger of auto being serviced at station was "occupying" car when he stood and observed mechanic and was injured by engine explosion, because service station was not ultimate destination of passenger, who intended to resume trip after vehicle service); Cepeda v. U.S. Fid. & Guar. Co., 37 A.D.2d 454, 326 N.Y.S.2d 864, 866 (1971) ("Where the passenger alights following some temporary interruption at a place other than his destination, remains in the immediate vicinity of the vehicle and there is every reason to believe that, had it not been for the accident, he would shortly have resumed his place in the vehicle, his status as a passenger has not changed."); Etter v. Travelers Ins. Co., 102 Ohio App.3d 325, 657 N.E.2d 298, 302 (1995) (driver of borrowed insured vehicle was "occupying" it when he pulled onto median after accident to assist second disabled vehicle and was struck by third, uninsured vehicle because driver was still waiting for tow truck, was within relatively close proximity to car, and assisting another disabled vehicle is "foreseeably identifiable" with normal use of vehicle); Utica Mut. Ins. Co. v. Contrisciane, 504 Pa. 328, 473 A.2d 1005, 1007 (1984) (holding driver of insured vehicle involved in collision with second vehicle was "occupying" vehicle after he retrieved items from vehicle in response to police officer's request and was struck by third, uninsured vehicle as he returned to patrol car and was 97 feet away from insured vehicle); Gen. Accident Ins. Co. of Am. v. Olivier, 574 A.2d 1240, 1241-42 (R.I.1990) (holding passenger of insured vehicle in collision was "occupying" vehicle as she stood next to police cruiser 117 feet away from insured vehicle, waiting to speak with officer, when other driver shot and killed her).