**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-16-0000602
19-JAN-2021
09:31 AM
Dkt. 20 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

ADELINE N. PORTER,
Petitioner/Claimant-Appellant,

vs.

THE QUEEN'S MEDICAL CENTER,
Respondent/Employer-Appellee, Self-Insured.

_____

SCWC-16-0000602

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000602; CASE NO. AB2012-438 (2-02-15470, 2-02-14444,
2-02-14445, 2-02-15471, 2-10-07337))

JANUARY 19, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND WILSON, JJ.,
AND CIRCUIT JUDGE OCHIAI, IN PLACE OF POLLACK, J., RECUSED

OPINION OF THE COURT BY WILSON, J.

## I.    BACKGROUND

Pro se[1] Petitioner/Claimant-Appellant Adeline N. Porter

("Porter") is a registered nurse who worked for the Queen's

_____

[1]    As a pro se litigant, Porter's pleadings must be interpreted
liberally.  See Dupree v. Hiraga, 121 Hawai'i 297, 314, 219 P.3d 1084, 1101

(continued . . .)

Medical Center ("QMC") from 1967—when she graduated from the Queen's School of Nursing—until 2005 when her employment was terminated. In 2002, Porter and other QMC employees in her building began suffering from respiratory symptoms precipitated by "environmental health issues" that she believed were the result of "contaminated carpet and wall coverings[.]" As a result of the alleged chemical exposure, Porter was treated in the emergency room on five separate occasions in 2002 and 2003. Porter was subsequently diagnosed with a disease known as Multiple Chemical Sensitivity ("MCS")[2] and filed multiple claims for workers' compensation ("WC") benefits alleging that she

_____

(continued . . .)

(2009). This court has explained that a pro se petitioner is not expected to comply with the "technical exactness" of the rules because the court will make "a determined effort to understand what the pleader is attempting to set forth" and will "construe the pleading in [her] favor." Id. Moreover, this proceeding is a workers' compensation proceeding, and "Hawaii's workers' compensation statute is to be accorded beneficent and liberal construction in favor of the employee, to fulfill the humanitarian purposes for which it was enacted." Respicio v. Waialua Sugar Co., 67 Haw. 16, 18, 675 P.2d 770, 772 (1984); see also Flores v. United Air Lines, Inc., 70 Haw. 1, 12, 757 P.2d 641, 647 (1988). Indeed, all reasonable doubts must be resolved in favor of the claimant. Lawhead v. United Air Lines, 59 Haw. 551, 560, 584 P.2d 119, 125 (1978).

[2]    According to Porter, MCS is a medical disorder where the patient develops sensitivities to multiple chemical compounds, the exposure to which can cause cardiac arrhythmias, vascular spasms, and cardiac ischemia among other symptoms. MCS is attributed to long-term exposure to low concentrations of chemicals, including volatile organic compounds.

sustained MCS injuries that occurred on August 9, 2002, August 31, 2002, November 6, 2002, November 8, 2002, and May 13, 2003.[3]

## II.  DISCUSSION

The issue before this court arises from the Labor and Industrial Relations Appeal Board's ("LIRAB") denial of Porter's request to reopen her claims pursuant to HRS § 386-89 (2013),[4] and the Intermediate Court of Appeals' ("ICA") affirmance of the denial.  In particular, Porter claims that the ICA erred by: (1) affirming the LIRAB's conclusion that she failed to present substantial evidence of a mistake in a determination of fact that would warrant a reopening of her WC claims under

---

[3]     The procedural history of this case will not be fully discussed as only the reopening of Porter's claims is at issue before this court.

Porter also continues to raise arguments related to her allegations of fraud, which were waived.  Porter's claims of fraud are precluded by the law of the case doctrine and will not be addressed by this court.  See Hussey v. Say, 139 Hawai'i 181, 185-86, 384 P.3d 1282, 1286-87 (2016) ("[A] determination of a question of law made by an appellate court in the course of an action becomes the law of the case and may not be disputed by a reopening of the question at a later stage of the litigation.").

[4]     HRS § 386-89(c) provides in relevant part:

> (c) On the application of any party in interest, supported by a showing of substantial evidence, on the ground of a change in or of a mistake in a determination of fact related to the physical condition of the injured employee, the director may, at any time prior to eight years after date of the last payment of compensation, whether or not a decision awarding compensation has been issued, or at any time prior to eight years after the rejection of a claim, review a compensation case and issue a decision which may award, terminate, continue, reinstate, increase, or decrease compensation.

HRS § 386-89(c) (emphases added).

3

HRS § 386-89(c); and (2) failing to apply the presumption of compensability under HRS § 386-85(1) (2011)[5] to her case.

HRS § 386-89(c) provides that a request for reopening a WC claim must be "supported by a showing of substantial evidence, on the ground of a change in or of a mistake in a determination of fact related to the physical condition of the injured employee," and if such a showing is made by the claimant, "the director may . . . review a compensation case and issue a decision which may award, terminate, continue, reinstate, increase, or decrease compensation." HRS § 386-89(c). A request for reopening is governed by the procedure provided in Hawai'i Administrative Rules ("HAR") § 12-10-63. HAR § 12-10-63 provides that an application for reopening "shall be in writing[ and] shall state specifically the grounds upon which the application is based[.]" HAR § 12-10-63. Following an

---

[5] HRS § 386-85(1) provides:

§386-85 Presumptions. In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:

(1) That the claim is for a covered work injury;

(2) That sufficient notice of such injury has been given;

(3) That the injury was not caused by the intoxication of the injured employee; and

(4) That the injury was not caused by the wilful intention of the injured employee to injure oneself or another.

HRS § 386-85(1).

4

application for reopening a case, "the director shall review the case file and may, by discretion, hear the interested parties." Id. Moreover, HAR § 12-10-30(d) provides that any request for reopening under HRS § 386-89(c) "shall be accompanied by medical information or any other substantial evidence showing a change in or of a mistake in a determination of fact related to the physical condition of the injured employee." HAR § 12-10-30(d). "Substantial evidence" must be "relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable [person.]" Van Ness v. State, Dep't of Educ., 131 Hawai'i 545, 558, 319 P.3d 464, 477 (2014) (quoting Flor v. Holguin, 94 Hawai'i 70, 79, 9 P.3d 382, 391 (2000)).

Here, Porter argues that it was a mistake for the Director to deny her claims based on his conclusion that "[s]ince there is no such injury as multiple chemical sensitivity, there is no injury per se." The LIRAB majority determined that Porter failed to produce "substantial evidence" of a mistake to support her HRS § 386-89(c) request for reopening. Porter challenges the ICA's affirmance of the LIRAB majority's determination that she failed to produce substantial evidence to support her allegations of a mistake of fact related to the Director's determination that she had not suffered a compensable illness because MCS is not an "injury per se." Porter also argues that it was a mistake for her claim to have

5

been decided on the question of whether MCS is a legitimate diagnosis, rather than on the question of whether her injury—described as MCS or otherwise—was work related.

The LIRAB majority's conclusion that Porter failed to present substantial evidence of a mistake in the determination of a fact was based on its finding that Porter "offered no new credible or reliable evidence that that [sic] MCS is, was, or has become an accepted medical diagnosis or a valid medical disorder." The LIRAB's and subsequently the ICA's characterization of the basis for Porter's allegations of mistake was artificially narrow. The LIRAB's decision appears to assume that Porter was arguing that the alleged mistake was only that MCS became a more recognized diagnosis subsequent to the original disposition of her claims.

In fact, in addition to arguing the mistake recognized by the LIRAB, Porter also clearly argued that it was a mistake for the Director to dispose of her claims based on his conclusion that MCS is not an "injury per se" given that Disability Compensation Division ("DCD") Administrator Gary Hamada ("DCD Administrator Hamada") stated that the compensability of an MCS claim is dependent on whether or not it is work related. Porter supported this argument with substantial evidence, including two letters from DCD Administrator Hamada representing that an MCS injury may be

compensable if it is determined to be work related. Throughout the litigation of her WC claims, Porter has repeatedly alleged that it was a mistake to deny her claims based on the Director's March 19, 2004 finding that "there is no such injury as multiple chemical sensitivity[.]"[6] That decision, denying Porter's claims because MCS is not an injury, was signed by DCD Administrator Hamada. Just over two years later, on September 6, 2006, DCD Administrator Hamada represented to Senator Norman Sakamoto that an MCS injury would be compensable if it was found to be work related.

Both of DCD Administrator Hamada's letters constitute substantial evidence supporting Porter's contention that it was a mistake to dispose of her claims on the basis that MCS is not a legitimate diagnosis. The first letter from DCD Administrator Hamada was a September 6, 2006 letter to Senator Sakamoto in response to an inquiry about the compensability of MCS. DCD Administrator Hamada wrote that the DCD database "is not able to

_____

[6] Porter has been pointing to this mistake all along. In her July 30, 2010 letter to the Director requesting the reopening of her claims, Porter argued that her WC claims should be reopened because the Director's March 19, 2004 decision denying her claims was based on a mistaken conclusion that MCS is not a valid diagnosis and therefore not compensable. Porter argued that "[t]here was obviously a mistake in the determination of fact previously which precluded Claimant from pursuing her claim, i.e., that MCS was not a physical condition which was recognized as an injury." In that same letter to the Director, Porter pointed to the September 6, 2006 letter from DCD Administrator Hamada and argued that "[a]s per the letter of Gary S. Hamada dated September 6, 2006, attached hereto, the Department of Labor now recognizes Multiple Chemical Sensitivity (MCS), as an injury which may be compensable."

identify cases involving MCS" but that "[a]ny employee may file a WC claim for MCS. If the MCS is determined to be caused by work, the injury would be covered under WC, however if MCS is determined not to have been caused by work, the claim would be denied."[7]

The second letter from DCD Administrator Hamada was an August 10, 2007 letter to Porter in which he again represented that MCS may be a compensable claim if it is determined to be work related. The letter stated that "[t]he department has NOT changed its policy regarding MCS. MCS is NOT recognized as a compensable injury for all workers' compensation claims. Workers' compensation determinations are based upon whether a claimant suffered a workplace injury/illness, for example, as a result of chemical exposure in the workplace."

Both letters from DCD Administrator Hamada plainly represent that MCS is a diagnosis that would be compensable under WC if it is found to be work related. These representations stand in stark contrast to the March 19, 2004 conclusion upon which the DCD Director relied in denying Porter's 2002 claims: that "[s]ince there is no such injury as multiple chemical sensitivity, there is no injury per se." This

---

[7]    The letter continued: "Automatically covering all MCS claims under WC may have the unintended effect of requiring WC to cover MCS cases not necessarily caused by work."

8

contrast is underscored by the fact that DCD Administrator Hamada was the signatory of both contradictory representations. As such, DCD Administrator Hamada's 2006 and 2007 letters represent substantial evidence of a mistake of fact in the determination of Porter's claims.

Accordingly, the LIRAB majority's finding that Porter failed to provide substantial evidence of a mistake is clearly erroneous. Likewise, the ICA's affirmance of the LIRAB's conclusion on this issue was error.

### III. CONCLUSION

For the forgoing reasons, we vacate the ICA's March 23, 2020 judgment on appeal and remand Porter's request for reopening to the LIRAB to determine if Porter's MCS injury is work related.[8]

| | |
|---|---|
| Adeline N. Porter<br>Pro Se | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Scott G. Leong<br>Shawn L.M. Benton<br>for Respondent | /s/ Sabrina S. McKenna |
| | /s/ Michael D. Wilson |
| | /s/ Dean E. Ochiai |



---

[8]     Though the LIRAB will need to determine the work-relatedness of Porter's illness on remand, her symptoms, described by her doctor as an MCS injury, must be presumed to be work-connected. As recently articulated by this court in Cadiz v. QSI, "Hawai'i's workers' compensation law begins with the explicit statutory presumption that a claimed injury is work-related and therefore compensable." 148 Hawai'i 96, 108, 468 P.3d 110, 122 (2020) (holding "[t]o rebut that presumption in favor of compensability, the employer bears the heavy burden of producing substantial evidence disproving that the injury is work connected" and "the 'substantial evidence' sufficient to overcome the presumption in favor of compensability must disprove the causal relation of the injury-by-disease to the conditions and incidents of claimant's employment, and not merely suggest plausible alternative explanations."). We explained that "even if the cause of the injury-by-disease is unknown, that in itself is a salient indication that the employer did not produce substantial evidence to meet its burden of production" to overcome the presumption that the claim is compensable. Id. at 109, 468 P.3d at 123.

Here, the reports upon which QMC relied, and upon which the LIRAB based its decision, provided competing and contradictory alternative explanations as to the true nature of Porter's illness including "allergic rhinitis from dust or pollen[,]" Porter's "prior history of [breast] cancer[,]" and even "psychological factors." As in Cadiz, the reports relied upon by the Director and the LIRAB to postulate that Porter's illness is "medically plausibly explainable by other medical conditions" other than chemical exposure at work are insufficient to overcome the presumption of work-relatedness. Id. at 110, 468 P.3d at 124. Moreover, "in the context of workers' compensation law, a lack of explanation for experienced symptoms or illnesses strengthens the presumption in favor of compensability instead of overcoming it." Id. at 112, 468 P.3d at 126.