**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000618
13-MAR-2024
07:53 AM
Dkt. 89 SO**

NO. CAAP-19-0000618

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

RICHARD SCOTT WEBB, Claimant-Appellant-Appellant, v.
OSF INTERNATIONAL, INC., Employer-Appellee-Appellee, and
HAWAII INSURANCE GUARANTY ASSOCIATION, Insurance
Carrier-Appellee-Appellee

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2017-280; DCD NO. 2-99-4705)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka and Wadsworth, JJ.)

Claimant-Appellant-Appellant Richard Scott Webb (**Webb**) appeals from the August 21, 2019 Decision and Order entered by the Department of Labor and Industrial Relations Appeals Board (the **LIRAB** or the **Board**) (**August 21, 2019 Order**), in favor of Employer-Appellee-Appellee OSF International, Inc., (**Employer**) and Insurance Carrier-Appellee-Appellee Hawaii Insurance Guaranty Association (**HIGA**). The August 21, 2019 Order denied Webb's appeal of the Decision of the Disability Compensation Division (**DCD**), LIRAB, State of Hawaiʻi, filed November 3, 2017 (**November 3, 2017 Order**). The November 3, 2017 Order denied Webb's request for reopening and treatment pursuant to Joseph DiCostanzo, M.D.'s (**Dr. DiCostanzo**'s) treatment plan dated April 26, 2017.

Webb raises six points of error on appeal, contending that the Board: (1) erred when it denied Webb a full hearing *de novo* as required by Hawaii Revised Statutes (**HRS**) § 386-87(b) (2015);[1] (2) erred by not requiring HIGA to prove facts essential to a limitations defense under HRS § 386-89(c) (2015); (3) wrongfully terminated Webb's independent rights to medical and disability benefits; (4) erred in denying the presumption of compensability favorable to Webb's reopening for the compensable consequence injuries to his right knee and wrist; (5) erred by failing to provide reasons for its denial of Webb's request for discovery orders/sanctions; and (6) erred in its rejection into evidence Webb's trial exhibits "H," "I," and "L."

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Webb's points of error as follows:

(1) Webb argues that because the Board stated in its pretrial order the "issues to be determined," and stated in the majority opinion, "the sole issue to be determined on this appeal. . .," Webb was denied a full trial *de novo*. More specifically, Webb argues that Hawaiʻi Administrative Rules (**HAR**)

---

[1] HRS § 386-87 states, in pertinent part:

**HRS § 386-87 Appeals to appellate board.**
. . . .
    (b)    The appellate board shall hold a full hearing de novo on the appeal.

§ 12-47-22(c) (eff. 1994),[2] is inconsistent with the policies of the workers' compensation statute, and its application in this case produced an absurd result because the Board did not consider Webb's contention that HIGA fraudulently mismanaged Webb's workers' compensation claim file.

First, HAR § 12-47-22(a)(2) gives the Board the authority to set the "issues for hearing" in its pretrial order.

Second, Webb cites no authority supporting the proposition that the Board's statement of the issues to be determined before conducting its hearing deprives an appellant of a full hearing *de novo,* and we find none. Here, Webb's counsel

_____

[2] HAR § 12-47-22 states, in pertinent part:

> **HAR § 12-47-22 Pretrial order**. (a) When an initial conference is held, the board may enter a pretrial order which recites the action taken at the conference, including:
> (1) The agreements made by the parties as to any of the matters considered;
> (2) The issues for hearing not otherwise disposed of by stipulation or agreement of the parties; and
> (3) The discovery deadlines.
> (b) When the pretrial order establishes discovery deadlines, the specified deadline means as follows:
> (1) Unnamed witness means identification of the name and address of an individual not previously identified in the party's pretrial statement.
> (2) Live witness means identification of individuals previously identified in the party's pretrial statement or unnamed witness statement, and who the party, in good faith, intends to have testify at trial. An individual not identified in the party's live witness statement shall not be allowed to testify at trial.
> (3) Medical report deadlne means the date that all medical reports or records shall be filed at the board.
> (4) Discovery deadline means the date that all non-medical documents or records shall be filed at the board, except that the transcript of an oral deposition of any individual conducted before such deadline may be filed after such deadline.
> (c) The pretrial order shall control the subsequent course of the appeal, unless modified by the board at the trial or prior thereto to prevent manifest injustice. The pretrial order shall supersede the pleadings where there is any conflict and shall supplement the pleadings in all other respects.

appears to have agreed that the issue statement was sufficiently broad, as after he is asked by the Chairman if the issue statement was correctly read and identified at the start of trial on November 5, 2018, he responds: "yes, it does, but . . . it encompasses way more issues, subissues, if you will, than just that bare statement."

Finally, Webb fails to identify how he was prejudiced by the Board's statement of the issues. As evidenced by the Board's findings of fact, the Board did consider Webb's claims of gross mismanagement and fraudulent concealment, and rejected them.

We conclude this argument is without merit.

(2) Webb contends that the Board misstated the burden of proof. However, HRS § 386-89(c), provides, in pertinent part:

> <u>On the application of any party in interest</u>, <u>supported by a showing of substantial evidence</u>, on the ground of a change in or of a mistake in a determination of fact related to the physical condition of the injured employee, the director may, at any time prior to eight years after date of the last payment of compensation, whether or not a decision awarding compensation has been issued, or at any time prior to eight years after the rejection of a claim, review a compensation case and issue a decision which may award, terminate . . .

(Emphasis added); <u>see</u> <u>also</u> <u>Porter v. Queen's Med. Ctr.</u>, 148 Hawaiʻi 530, 532-33, 479 P.3d 148, 150-51 (2021); <u>Smith v. Kanemoto</u>, CAAP-10-0000200, 2013 WL 6150720, *1 (Haw. App. Nov. 22, 2013) (SDO); <u>Otani v. State, Dep't. of Pub. Safety</u>, No. 30496, 2012 WL 540103, *1 (Haw. App. Feb. 17, 2012) (SDO); <u>Enocencio v. State, Dep't. of Hum. Servs.</u>, No. 29537, 2010 WL 543973, *1 (Haw. App. Feb. 17, 2010) (SDO).

Here, the Board found that Webb did not meet his burden to support his application for reopening. We conclude that the

Board did not clearly err in finding that Webb did not provide substantial evidence to support his reopening application. Thus, Webb's second point of error has no merit.

(3) Webb's third point of error states that the Board wrongfully terminated his independent rights to medical and disability benefits, citing the 1963 amendments to the medical benefits section of the Hawaiʻi Workmen's Compensation Law, § 97-22, and a study stating that medical benefits are now unlimited. However, Webb makes no argument in support of this point of error and it is deemed waived. See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(7).

In conjunction with this point, Webb seems to raise two other issues, that: (1) the Board's finding that Webb's April 1, 1999 work injury claim was properly and administratively closed by Employer in 2007, by a final WC-3 report, after Claimant was last treated by Dr. Saito on November 23, 2004, was clearly wrong; and (2) the date of the last payment of compensation is wrong. However, when HIGA filed the final WC-3 indicating that Webb's file was to be closed, sending a copy to Webb's home address, the claim was properly closed. See, e.g., Skahan v. Stutts Constr. Co., CAAP-16-0000538, 2019 WL 3765413, *9 (Haw. App. Aug. 9, 2019) (SDO). In addition, although Webb disputes the date of the last payment in 2005, he does not point to any evidence supporting an alternate date. These arguments are without merit.

(4)   Webb argues that the Board erred by not applying the presumption of compensability found in HRS § 386-85 (2015)[3] when considering Webb's request for reopening.  However, the presumption of compensability applies to the question of whether an injury is work-connected.  See, e.g., Tamashiro v. Control Specialist, Inc., where the Hawaiʻi Supreme Court stated that "[t]his presumption applies to the 'work relatedness' of an injury."  97 Hawaiʻi 86, 91, 34 P.3d 16, 21 (2001).

Here, the Board concluded that Webb's 2017 request for reopening for an alleged change in condition was barred by the 8-year statute of limitations for reopening a claim.  See HRS 386-89(c).[4]  Thus, the HRS § 386-85 presumption did not apply.

---

[3]   HRS § 386-85 states:

**HRS § 386-85  Presumptions.**  In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:
(1) That the claim is for a covered work injury;
(2) That sufficient notice of such injury has been given;
(3) That the injury was not caused by the intoxication of the injured employee; and
(4) That the injury was not caused by the wilful intention of the injured employee to injure oneself or another.

[4]   HRS § 386-89 states, in pertinent part:

**HRS § 386-89  Reopening of cases; continuing jurisdiction of director.**
. . . .
(c) On the application of any party in interest, supported by a showing of substantial evidence, on the ground of a change in or of a mistake in a determination of fact related to the physical condition of the injured employee, the director may, at any time prior to eight years after date of the last payment of compensation, whether or not a decision awarding compensation has been issued, or at any time prior to eight years after the rejection of a claim, review a compensation case and issue a decision which may award, terminate, continue, reinstate, increase, or decrease compensation.  No compensation case may be reviewed oftener than once in six months and no case in which a claim

(continued...)

See also Skahan, 2019 WL 3765413 at *9.

(5)  Webb argues that the Board erred when it denied his Motion to Compel and Motion for Reconsideration without providing reasons for the denial.  Webb filed a discovery motion seeking the physical copy of his workers' compensation file that HIGA sent to a liquidator after issuing the final WC-3 in March of 2007, closing Webb's workers' compensation case.  While Webb alleges that HIGA concealed facts from the parties, the Board found the parties were informed, crediting HIGA claims examiner Lianne Ching's testimony that it was "[e]mployer's practice to mail copies of Claimant's WC-3 reports to claimant's home address."  Additionally, Webb sought a telephone log of calls HIGA received from Webb or others calling on Webb's behalf that he believes was with the physical file.  However, Webb presented no evidence that anyone called HIGA prior to Webb's calls in 2016, after the statute of limitations for reopening had already expired.

In addition, Webb cites no authority that requires LIRAB to state written findings or explanations in orders on discovery requests.  In light of the record before the Board, we conclude that the Board did not abuse its discretion in denying Webb's requests for discovery.

(6)  Webb argues that the Board erred when it did not allow into evidence Webb's trial exhibits "H," "I," and "L."

---

[4](...continued)
has been rejected shall be reviewed more than once if on such review the claim is again rejected.

Webb asserts the Board erred because the exhibits were all relevant to the Board's decision.

The Board declined to admit exhibit "H" because it was filed on October 9, 2018, after the August 27, 2018 medical reports submission deadline. The Board did not admit exhibit "I" because it was filed on October 9, 2018, after the August 24, 2018 discovery cutoff deadline. Lastly, the Board did not admit into evidence exhibit "L" during the November 20, 2018 trial, because it was filed with the Board on November 19, 2018, after both the medical reports submission deadline and discovery cutoff deadline had passed. All three exhibits were filed after the applicable deadlines established in the Board's pretrial order on March 18, 2018, and Webb did not request the deadlines be extended. Webb did not demonstrate that he could not have obtained the medical records and reports prior to the discovery deadline through the exercise of due diligence. We conclude that the Board did not abuse its discretion in refusing to admit these exhibits into evidence. <u>See</u>, <u>e.g.</u>, <u>Yadao v. State, Dep't of Land & Nat. Res.</u>, 137 Hawaiʻi 162, 176-77, 366 P.3d 1041, 1055-56 (App. 2016).

For these reasons, the Board's August 21, 2019 Order is affirmed.

**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

DATED: Honolulu, Hawaiʻi, March 13, 2024.

On the briefs:                          /s/ Katherine G. Leonard
                                        Acting Chief Judge
Christopher R. Evans,
for Claimant-Appellant-Appellant.       /s/ Keith K. Hiraoka
                                        Associate Judge
Wayne W.H. Wong,
Matthew K. Wong,                        /s/ Clyde J. Wadsworth
(Wong & Associates),                    Associate Judge
for Employer-Appellee-Appellee
 and Insurance Carrier-Appellee-
 Appellee.